CHARLES McCARTY v. HOUSTON & TEXAS CENTRAL RAILWAY COMPANY.

Decided November 22, 1899.

**1. Release of Damages Avoided for Mistake.**

A release of all damages for personal injuries resulting from the derailment of a train, given for valuable consideration and without fraud, may be avoided on the ground of mistake where it subsequently develops that there were other and much more serious injuries that were not known or considered at the time of the release.

**2. Same—Amount Paid Not Refunded—No Tender.**

Where, in consideration of a certain sum allowed for a specific personal injury, the injured person executes a release of all damages, and afterwards discovers that there were other and more serious injuries, he can retain the sum so paid him and sue for the part of his claim it was not intended·to discharge.

**3. Same—Measure of Proof—Charge.**

A charge imposing on one seeking to set aside a release the burden of establishing the facts that would avoid it by "clear and satisfactory proof," is erroneous.

**4. Carriers of Passengers—Degree of Care.**

Carriers of passengers are not required to exercise the "utmost degree of care," but only that high degree of care which very cautious and prudent persons would exercise under like circumstances.

APPEAL from Waller. Tried below before Hon. T. S. REESE.

*Baldwin & Meek* and *R. E. Hannay,* for appellant.

*Baker, Botts, Baker & Lovett* and *Frank Andrews,* for appellee.

GILL, ASSOCIATE JUSTICE.—This was a suit brought by Charles Mc-Carty, appellant, wherein he sought to recover of appellee, the Houston & Texas Central Railroad Company, damages for personal injuries alleged to have been sustained by him while he was a passenger on appellee's train, and occasioned by the derailment of the coach upon which he was riding at the time.

The causes which produced the derailment are averred to have been a defective track, a defective switch, and the use of a switch which was in its nature unsafe and unsuitable, and it further averred that switches of a much newer and safer make were in use by appellee at other points upon its road. The existence of these conditions was alleged to be due to the negligence of appellee. The petition further averred that while he was in a helpless condition, as a result of his injuries, and suffering intensely therefrom, he was taken by appellee's agents to the Houston infirmary for treatment. That this institution was used by appellee for the care and treatment of injured employes, and was in charge of one Dr. Boyle, a physician and surgeon in the employ of appellee. That while thus suffering, said Dr. Boyle and R. E. L. Swanson and W. D. Herring, the claim agent of appellee railroad company, approached him for the purpose of securing from him a release for the damages sustained by him. That in pursuance of their purpose they assured him that he had sustained only a slight injury to his ankle and foot, and would be well and able to resume his work in six weeks. That this assurance was given by the physician, Dr. Boyle, who was attending his injuries, and was reiterated and affirmed by said Swenson and Herring, and plaintiff was thereby induced to believe that he was only slightly injured in his foot and ankle and would be well in six weeks. That at the time these assurances were given him, appellant called the physician's attention to pains which he was suffering in his back and lower bowels, and that Boyle stated to him that the pains amounted to nothing; that one of appellant's age was likely to have such pains, and that plaintiff was free from any injury save the one to his ankle. That acting upon the belief thus induced, and taking into consideration no injury save the one to his ankle and the six weeks loss of time to be occasioned thereby, he accepted from said agents the sum of $430 and executed a release. That the agents of the company in securing same took into consideration no other injury or element of damage save those alleged, and the loss of a watch, which was included in the settlement at a valuation of $30. That the injury occurred on the 27th of April, 1897, and the release was dated April 28, 1897. That the money was not accepted by him for any other purpose, or in satisfaction of any other injury. That the representations by which this release was procured were fraudulently made by defendant's agents to induce him to settle. That at the time he had sustained an injury known as concussion of the spine, which has since destroyed his health and usefulness, and that this latter injury, and the injury to his bowels was unknown both to himself and defendant's agents. The prayer was for rescission of the release and that the amount received be credited on any judgment plaintiff might recover, and for general relief.

Appellee after exceptions answered by general denial, and that the injury was due to unavoidable accident or was the result of interference with the switch by parties unknown and not under its control. The release was pleaded as a full settlement of and bar to appellant's action.

The demurrers were overruled, and upon trial the verdict of the jury was in favor of appellee, and this appeal is from the judgment rendered thereon.

The pleadings are thus fully set out in order that our decision of what we deem the most important question in the case may be clearly understood. The facts attending the execution of the release will appear further on in this opinion.

Inasmuch as errors were committed during the trial which will necessitate a reversal of the cause unless appellee's contention is correct that exceptions should have been sustained, or that a peremptory instruction in its favor should have been given, we will dispose of this question first. The contention of appellee, and proper assignments of error urged by appellant, present the question whether, under any phase of the pleadings and facts, appellant could avoid the effect of the release, admitted by him to have been assigned with knowledge of its terms. The release is in the following language:

"Know all men by these presents: That I, Charles McCarty, of the town of Welborn, Texas, for and in consideration of the sum of four hundred and thirty dollars to me in hand paid by the Houston & Texas Central Railroad Company, of the State of Texas, have remised, released, and forever discharged, and by these presents do for myself, my heirs, executors, administrators, and assigns, remise, release, and forever discharge the Houston & Texas Central Railroad Company of and from all and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, claims and demands whatsoever, which I had or have now, or which I or my heirs, executors, administrators, or assigns, can, shall, or may have by reason of any damage or personal injury sustained by me in the wreck of the southbound passenger train No. 4, of said Houston & Texas Central Railroad at Fairbanks yesterday morning at 5 o'clock, on which train I was a passenger, and on my way from Welborn to Houston, or by reason of any matter, cause, or thing whatsoever.

"In testimony whereof I have hereunto set my hand and seal on this, the twenty-eighth day of April, 1897.

                    (Signed)    "CHAS. McCARTY.    (L. S.)
"Witness:   J. R. Stuart, E. L. Adams."

It is thus seen to be a full and complete release of all claims for damages or injuries to appellant as a result of the accident, and unless avoided by either fraud or mistake the judgment should be permitted to stand.

It can not be avoided on the ground that appellant was not mentally fit to contract at the time, for that issue has no support in the evidence. Nor do we think the evidence shows such active fraud on the part of appellee's agents as to actual knowledge of graver injuries, and efforts to conceal them from appellant, as would sustain a verdict setting aside

the instrument upon that ground alone.   There is, however, consider-
able evidence tending to show that the alleged injuries to appellant's
spine and bowels were unknown to the parties connected with the trans-
action, and that these graver and more permanent injuries were not
taken into consideration by any party to the settlement.   That appel-
lant signed the release under a mistake as to the real situation in this
regard, and could not have been induced to sign had these other injuries
been known to him, has equal support in the testimony. This being true,
the question arises, can a release couched in terms broad enough to
cover all personal injuries growing out of a particular accident be avoided
on the ground of mistake?   That courts of equity have power to set
aside settlements affecting property under these circumstances is un-
doubtedly true.   Equity relieves against mistake as well as fraud.   In
the case of Lyall v. Edwards, 6 H. & N., 336, cited by appellant, a re-
lease which was pleaded against a claim for conversion, and which was
broad enough to cover an item which was unknown and did not in fact
enter into the settlement, was set aside, the court declaring that a re-
lease can not be held to apply to circumstances of which a party had no
knowledge at the time he executed it, and if its terms are so general as
to include matters not contemplated the party sought to be held is en-
titled to relief.

We can see no logical reason why the principle thus applied to re-
leases affecting property may not be applied with equal force and justice
to claims like the one under consideration.   The right involved is cer-
tainly valuable, and to the appellant was perhaps more important than
any other in his possession.   The cases in which the rule has been so
applied are not numerous, and, so far as we know, the question whether
it can properly be done has not been adjudicated in this State.

The case of Lumley v. Railway, 6 American and English Railway
Cases (new series), 81, is strikingly similar to the one under considera-
tion, the difference being that the release in that case undertook to de-
scribe the nature of the injuries settled for.   It puported, however, to
be a complete release of all the injuries sustained by the party as a re-
sult of the accident, and enumerated the injuries intended to be covered
in the following terms:   "Severe contused and lacerated wound on fore-
head, right side, fracture of right arm between wrist and elbow, and
various injuries and contusions both internally and externally in and
on various parts of the body;" and the release is from "all action, suits,
claims, reckonings, or damages for or on account of or arising out of
or arising from injuries so received and any and all results hereafter
flowing therefrom."   It also recited that the company's liability was
doubtful, and that it was a compromise to avoid litigation.   Subse-
quent developments disclosed the presence of injuries of a grave and per-
manent character which both the facts alleged and the amount received
in settlement indicated could not have been in the minds of the parties
at the time.   The court held that the release, in so far as its terms un-
dertook to preclude the right of recovery for the unknown injuries,

would be set aside. The fact that in that case the unknown injuries were not included in the particular description does not seem to have been considered as affecting the question. The broad rule applicable to like cases arising out of transactions affecting property was applied without qualification. The opinion contains a lengthy review of the authorities, and we are constrained to believe that it lays down the true rule.

In Railway v. Artist, 60 Federal Reporter, 365, it was held that the general terms in the release were limited by specific recitals of injury, but the fact remains that such general terms were permitted to be avoided only upon a showing that they were inserted under the mistaken belief that no other injuries save those named in fact existed, and that these were of such a grave nature as would have prevented the settlement as made, if their existence had been known. In this case all claims were released "from the beginning of the world to this day." We think this case supports the rule declared in Lumley's case.

In 20 American and English Encyclopedia of Law, 764, it is declared in the text that a release procured by fraud, unfair advantage, duress, or mistake will not stand, and many authorities are cited, one of which holds that where the party is induced to sign by false representations that his injuries are slight and would not become serious, he may avoid it. Herschfield v. Railway, L. R. 2 Q. B. Div., 1.

The case of Matee v. Railway, 15 Southwestern Reporter, cited by appellant, also tended to sustain this doctrine. That it was reversed upon rehearing does not seem to have attracted the attention of counsel, but the reversal was mainly upon the facts, and does not seriously affect the doctrine declared in the first opinion. 16 S. W. Rep., 839. True, it is there held that railway companies should be encouraged in the making of fair and just settlements with parties injured, and that such settlements should not be lightly disturbed. To this we assent, but in the case at bar, if appellant's contention be true, the agreement was neither just nor fair, the grave nature of the unknown injuries being out of all proportion to the amount accepted, and the attendant facts showing a pressing eagerness on the part of appellee's agents to settle at once, and that nothing was in fact considered except the injuries to the foot and ankle. We are aware that the unrestricted application of this doctrine to personal injury cases would open the door to many abuses and much vexatious litigation, and are of opinion that such releases should be set aside only on a clear showing that the unknown injuries are not only of such a grave nature as to be out of all proportion to the sum paid, and manifestly not considered by the parties, but the party signing the release should be held to a showing of reasonable diligence in ascertaining the nature and extent of his injuries before he will be permitted to impeach a release setting forth a full discharge. It will be seen from the evidence set out further on in this opinion that this is a case in which, under proper instructions, the jury may have concluded that the appellant was not derelict in this respect, and was justified in

acting upon the alleged assurance of his attending physician and Swanson and Herring. While such instruments should not be lightly disturbed, it is equally true that when made under the circumstances alleged they are to be scrutinized closely, and the courts should in a proper case relieve against manifest injustice.

Here, if any other injury was known or suspected by the physician or company's agents, they were under the strongest obligation to disclose them. If the surgeon honestly believed the pains in the back and the condition of the bowels were not due to the accident and were symptoms natural to one of appellant's age, then the additional injuries complained of were not a part of the consideration moving to the execution of the release. It can not be said that appellant should not have relied on the physician's opinion. It was not the mere casual opinion of a nonexpert, but a professional opinion, receivable as evidence in a court of justice, and was given to appellant with actual knowledge that it would, at least in part, form a basis of the negotiations then pending.

. In the case before us we think it clear that the instrument can not be entirely avoided, for, in so far as it discharges appellee for liability for injuries to the foot and ankle, or any other known injury, or any injury which can be fairly held in the light of the facts to have been reasonably within the contemplation of the parties, the appellant is bound. The contention that his cause of action is not divisible is in one sense correct, for if he brought suit for injuries to his foot and ankle a judgment therein would have been a bar to any further claim. This, however, has been held to be a rule of procedure to prevent a multiplicity of suits. It does not apply to settlements between the parties, and the decisions upon this question are in practical accord. Some of the authorities cited by appellee clearly indicate a rule hostile to his contention, especially the cases holding that settlement for certain named items of damage, with no general terms of release, would permit the maintenance of a suit for the items not included. Roberts v. Railway, 1 F. & F., 460. This being true, the question whether the appellant should be required to refund the money received in the settlement ceases to be difficult, for since the release is valid and binding as to the injuries it was actually intended to cover, the appellant is paid and the company discharged to that extent. He may retain the sum and sue for the part of his claim which it was not intended to discharge. Bliss v. Railway, 160 Mass., 447.

This declaration is made only as to the appellant's effort to avoid the release and recover on the ground of mistake. Inasmuch as he knew the terms of the instrument he signed and did in fact make the contract, he will not be permitted to undertake to set it aside for any reason and sue for any injury actually intended by the parties to be embraced within its terms, without first tendering to appellee the sum received. The distinction drawn by the appellee is the true rule in this State, and it is only in cases where the party was deceived by fraudulent representations as to the nature of the instrument that he is per-

mitted to retain the consideration and sue as though nothing had been received, except that in the event of recovery the sum is to be deducted from the amount found. In Railway v. Harris, 158 U. S., 326; Railway v. Doyle, 18 Kansas, 58; Railway v. Lewis, 109 Illinois, 120, and Mullen v. Railway, 127 Massachusetts, 86, the expression is used that fraud vitiates everything it touches, and that contracts induced by fraud may be set aside without a return of the consideration, but these expressions must be read in the light of the facts in the cases in which they were used. They were clearly meant to apply to fraudulent concealment of the nature of the instrument signed, and rendered void by the fact that its terms never in fact received the assent of the party sought to be bound.

The petition having stated a cause of action notwithstanding the release, the exceptions were properly overruled, and if there was presented upon the trial evidence in support of the issues made by the pleadings, these issues should have been submitted to the jury under proper instructions.

The facts attending the settlement are briefly these: The plaintiff immediately after the injury was taken to the Houston infirmary. On the following morning he was placed upon a stretcher and taken to the operating room, where Dr. Boyle, the company's surgeon, and Swanson and Herring then were. Up to that time no examination of his injuries had been made by any physician. Dr. Boyle proceeded with the examination of his ankle, making no other investigation. Herring asked if it were not simply a bruise, and he stated it was a dislocation. Plaintiff claims that he, Boyle, assured him he would be well and able to work in six weeks, but upon this point the evidence is conflicting. This was about 8 o'clock in the morning, and appellant was suffering much pain. Herring stated that he had come over to settle with him, as he had settled with all the others. Appellant stated that he did not wish to go into the matter until his wife came. Late in the afternoon of the same day Herring and Swanson returned and found appellant's wife with him. He was still suffering, and seemed to doubt the assurance that he would recover in six weeks, a doubt which his wife also shared. Appellant called the doctor's attention to the pains in his back and the condition of his bowels, but was assured by him that they were symptoms natural to his age, and suggested some simple remedy. The negotiations were pending several hours, the wife suggesting that if the ankle would be well in six weeks to wait until the end of that time. Herring replied that he was in a hurry and wished to settle now. The entire discussion was confined to the ankle and the time which appellant would likely be disabled thereby. When the amount was finally agreed on appellant suggested that he ought to be allowed $500, when Herring said, "Four hundred dollars is $250 per month for your time." Appellant said, "You allow me nothing for my pain," and the reply was, "We are not paying for pain." Thereupon the release was signed, but just before signature the wife suggested that if appellant's ankle would be

well in six weeks the provision should be inserted. This was refused. Prior to any effort to settle, appellant sent word to the superintendent of the road that he thought he would settle, but the message was not delivered. The release was promptly disaffirmed, and this suit instituted.

We think this state of facts entitled appellant to have submitted to the jury the issue of mistake, with appropriate instructions for their guidance in its determination.

Under the charge of the court as given the jury could consider in avoidance of the release only the issue of the mental capacity of the party to contract and the question of fraud. We have already said that the facts as disclosed by this record do not raise either of those issues.

Appellant's compaint that the court erred in his definition of the care required of appellee to prevent injury to passengers on its trains can not be sustained. It was error against appellee. Carriers of passengers are not required to exercise the "utmost degree of care," but only that high degree of care which very cautious and prudent persons would exercise under like circumstances. Railway v. Welch, 86 Texas, 204. and authorities there cited.

The charge which imposed on appellant the burden of establishing the facts which would avoid the release "by clear and satisfactory proof," was error, such not being the rule in this State. Railway v. Brazil, 72 Texas, 237; Willis v. Chowning, 90 Texas, 624; Rider v. Hunt, 6 Texas Civ. App., 238.

We are also of opinion that the court should have submitted to the jury each ground of recovery which was made an issue in the pleadings and found support in the evidence. This the court did not clearly and distinctly do.

In disposing of the eighth assignment of error it is sufficient to say that evidence of acts and conversations of the parties during the negotiations looking to the execution of the release were admissible as tending to explain what was in fact known to and in contemplation of the parties, as well as under the allegations of fraud. Other parts of this opinion sufficiently indicate the reasons for this holding.

We have not thought it necessary to dispose of the various assignments of error in their order, but have disposed of the questions raised in their logical order without referring to the specific assignments raising them. Other assignments not discussed herein question the correctness of the trial court in the giving and refusing of charges, but we deem it unnecessary to discuss them, as the matters complained of, if error, are not likely to occur upon another trial.

For the reason give above the judgment is reversed and the cause remanded.

*Reversed and remanded.*