Blema B. Tatman,

*vs.*

Philadelphia, Baltimore and Washington Railroad Company.

*New Castle, Jan. 23, 1913.*

It is the policy of the law to sustain the compromise of disputed claims, and in the absence of fraud or mistake an executed agreement of settlement of an unliquidated claim is as effectual as an estoppel against the parties again litigating it as a final judgment.

To invalidate a release because of mutual mistake, it must relate to a past or present fact material to the contract, and not to an opinion as to future conditions.

Where a release for personal injuries covers only particular injuries, while there were others unknown to both parties, there is such a mistake of fact as will authorize equitable relief against using the release as a bar to a claim for the unknown injuries, though the specific description was followed by general language.

An innocent misrepresentation by defendant's physician, relied on by both parties, as to the kind of injury received by plaintiff, may avoid the release.

A release for personal injuries was of "all claims and demands which we or any of us have or can have" against the railroad company named "for or by reason of any matter or thing whatsoever, and more especially by reason of losses and damage sustained" because of personal injuries, and further recited that the company paid the money in compromise of

the claim released, not admitting any liability. When the release was executed, both parties believed that the injury to releasor was only a superficial scratch on the cornea of the eye, relying upon statements by the company's physician, made in good faith, to that effect, when in fact the injury was from a deep penetration through the eye, including the retina, which afterwards caused loss of sight. *Held*, that there was a "mistake of fact" as to the extent of the injuries, so that equity would enjoin the use of the release as a bar to an action by releasor for damages for the injuries not known when the release was executed.

Where defendant railroad company paid a claim for personal injuries to releasor by way of compromise without admitting liability, releasor should repay the consideration received as a condition to securing an injunction to restrain the use of the release as a bar to further recovery on the ground of mistake in executing it.

INJUNCTION BILL. The bill in this cause was filed by Blema B. Jones, a minor, by her next friend, Alexander Jones, to restrain the pleading of a release by the Philadelphia, Baltimore and Washington Railroad Company in a suit at law for damages as a result of injuries sustained by the complainant by the explosion of powder in transportation over the company's railroad. Upon the complainant's arrival at twenty-one years of age, upon petition, she was permitted to prosecute this cause in her own name and right, she having married one Tatman since the filing of the bill. The matter was heard on bill, answer, testimony and exhibits.

*Hugh M. Morris*, for the complainant.
*Ward, Gray & Neary*, for the defendant.

THE CHANCELLOR: This was a bill to enjoin a defendant in a suit at law from pleading a release. On December 2, 1903, Blema B. Jones and her mother, Addie M. Jones, were injured at Greenwood by an explosion of powder being transported in a car by the Philadelphia, Baltimore and Washington Railroad Company. At the February term, A. D. 1904, of the Superior Court of New Castle County, suit was brought by the complainant, then a minor, by her next friend, against the company for damages for her injuries so received. After the declaration had been filed in that suit, the plaintiff therein, by her

next friend, filed a bill in this court asking that the defendant
be enjoined from using as a defense the release made by Blema
B. Jones and others, dated February 4, 1904, given under the
following circumstances:   Beyond slight bruises, the injury
received by Blema B. Jones was to one of her eyes.  She was
attended by the physician usually employed by the family,
and by another physician, an eye specialist of repute,
both of whom were employed for the purpose by the railroad
company and by it paid for their services.   These physicians
told the injured girl, her parents and one Dorrance, an agent
of the company engaged in settling claims of those injured
by the explosion, that the injury to the girl's eye was only a
scratch on the surface of the eye, and one of them said that
glasses would bring the eye right.   Relying on these represen-
tations the parents of Blema B. Jones, who was then a minor
over fourteen years of age, agreed with Dorrance upon a
settlement for the injuries sustained by Blema B. Jones and
her mother, who also received personal injuries by the same
explosion.   On February 4, 1904, a joint release was executed
by Blema B. Jones, her father and mother, and John C. Bar-
wick, who had been appointed guardian for the child.   The
sum of $3,400 was paid for the release for the injuries to Blema
B. Jones and her mother without either stating in the re-
lease the character of the injuries, or distributing or sepa-
rating among those entitled thereto the sum paid for the injuries
to the two persons.   It was agreed, however, between all
parties thereto, including Dorrance for the railroad company,
that the sum of $500 was for the injuries to Blema B. Jones,
and this sum, being part of the $3,400 mentioned in the re-
lease, was received by her guardian.

    Afterwards the injuries to the eye of Blema B. Jones
were found to be different from that which all concerned
considered to exist at the time of the release.  She lost the
sight of the injured eye, and another specialist found that
the eye instead of being superficially scratched, had been
penetrated deeply through four coats, including the retina,
and the injured eye was removed.   There was no dispute
as to the testimony and the defendant offered no evidence.

The complainant tendered herself ready to repay to the company the sum of $500, which she received through her guardian, and this offer, though made on her behalf when she was an infant, is now enforceable as a condition for a decree in her favor, since she has now attained her legal majority.

By the bill the complainant seeks to prevent the use of the release as a defense to her suit for damages. To the bill the defendant demurred generally. This demurrer was overruled by Chancellor Nicholson, who in a brief opinion found that the facts constituted a mistake with regard to an actually existing fact and an erroneous description of the wound actually inflicted, and, therefore, that it was such a mistake as falls within the well established principle that a court of equity will give relief by way of canceling a contract based on a mistake of actually existing facts.

The release was that of Blema B. Jones, her father, mother and guardian (her mother having been injured by the same explosion) of "all claims and demands which we or any of us have or can have, against the said the Philadelphia, Baltimore and Washington Railroad Company, or their successors, for or by reason of any matter, cause, or thing whatsoever, and more especially by reason of losses and damages sustained by us in consequence of personal injuries received by the said Addie M. Jones, wife of the said Alexander Jones, and injuries received by the said Blema B. Jones, minor daughter of the said Alexander Jones and Addie M. Jones, which were caused by the explosion of glycerine powder in a car of a train at Greenwood, in the state of Delaware, on December 2, 1903. And the said the Philadelphia, Baltimore and Washington Railroad Company, in paying the said sum of money, do so in compromise of the said claim and demand above released, not admitting any liability on account of the same."

By the pleadings and proofs, then, it appears that a release was given for personal injuries, all the parties to the release, both releasors and releasee, believing that the injuries were of a certain kind, while in fact they were not only more serious in extent, but different in kind, for it is fair to

say that a superficial scratch of the cornea of the eye is quite a different kind of an injury from a deep penetration through four coats of the eye, including the retina. Again it appears clearly proven that all parties relied on the physicians of the company and their representations without independent advice, and that the statements were made and treated as the basis of the settlement which was induced thereby. It is also true that there is no evidence of bad faith on the part of the medical attendants, but of a mistake in diagnosis. Under such circumstances no fault is attributable to the complainant, or those acting for her, in accepting the settlement and giving the release, under the circumstances here alluded to, or under any shown in the evidence.

In this State the particular questions here raised have not been passed on, though there are some decisions here on the general subject of equitable relief against mistakes. None of them, however, seem to be pertinent. The law respecting unsettling settlements is well stated by Judge Sanborn thus, in the case of *Chicago, etc., Railway Company v. Wilcox,* 116 *Fed.* 913, 914:

"The policy of the law has always been to promote and sustain the compromise and settlement of disputed claims. It loves peace, hates broils and dissensions, and discourages the prolongation of litigation and the revival of controversies which have once been closed. The judgment of a court settles the claims submitted to it, and estops the parties from again litigating them after they have been adjudicated. In the absence of fraud or mistake, an executed agreement of settlement of an unliquidated or disputed claim constitutes as conclusive and as effectual an estoppel against the parties to the compromise from again litigating the claim thus settled as the final judgment of a court of competent jurisdiction, to the effect that the rights of the parties are as they are set forth in the agreement; and such a contract is always upheld by the courts. *Kercheval v. Doty,* 31 *Wis.* 476, 484; *Bank v. McGeoch,* 92 *Wis.* 286, 313, 66 *N. W.* 606, 614; *Hennessy v. Bacon,* 137 *U. S.* 78, 11 *Sup. Ct.* 17, 34 *L. Ed.* 605; *Van Trott v. Wiese,* 36 *Wis.* 439; *Zimmer v. Becker,* 66 *Wis.* 527, 29 *N. W.* 228; *Woodford v. Marshall,* 72 *Wis.* 132, 39 *N. W.* 376. Nor will such agreements be lightly disturbed upon confused, conflicting, or uncertain evidence of fraud or mistake. The burden is always upon the assailant of the contract to establish the vice which he alleges induced it, and a bare preponderance of evidence will not sustain the burden. A written agreement of settlement and release may not be rescinded for

fraud or mistake, unless the evidence of the fraud or mistake is clear, unequivocal, and convincing."

In order to invalidate a release on account of mutual mistake, the mistake must relate to a past or present fact material to the contract and not to an opinion respecting future conditions as results of present facts. *Chicago, etc., Ry. Co. v. Wilcox,* 116 *Fed.* 913; *Nelson v. Chicago, etc., R. Co.,* 111 *Minn.* 193, 126 *N. W.* 902, *Houston, etc., Co. v. Brown, (Tex. Civ. App.)* 69 *S. W.* 651 (1902); *Homuth v. Metropolitan, etc., Co.,* 129 *Mo.* 629, 31 *S. W.* 903.

The case of *Chicago, etc., Co. v. Wilcox,* 116 *Fed.* 913, well illustrates the difference between a prognosis and diagnosis. There the plaintiff's hip had been broken and she compromised and released her claim, knowing when she settled that her hip had been broken and that it was a bad break. Her physician, who was also the physician of the company, stated his belief that she would be well within a year and believing this she settled. She was mistaken as to the duration of the injury and the disability turned out to be permanent. The bill to rescind the release was dismissed because her mistake was not a mistake of fact, but an opinion or belief as to the future event. Judge Sanborn well expressed the distinctions between mistakes in prophecy as to future uncertain events:

"Again, it is not every mistake that will lay the foundation for the rescission of an agreement. That foundation can be laid only by a mistake of a past or present fact material to the agreement. Such an effect cannot be produced by a mistake in prophecy or in opinion, or by a mistake in belief relative to an uncertain future event. A mistake as to the future unknowable effect of existing facts, a mistake as to the future uncertain duration of a known condition, or a mistake as to the future effect of a personal injury, cannot have this effect, because these future happenings are not facts, and in the nature of things are not capable of exact knowledge; and everyone who contracts in reliance upon opinions or beliefs concerning them knows that these opinions and beliefs are conjectural, and makes his agreement in view of the well known fact that they may turn out to be mistaken, and assumes the chances that they will do so. Hence, where parties have knowingly and purposely made an agreement to compromise and settle a doubtful claim, whose character and

extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happen very differently from the expectation, opinion, or belief of one or both of the parties."

This is the test he applied: "Is the evidence in this case clear and convincing that the complainant was induced to compromise her claim and to execute her release by a mistake of past or present fact material to her contract?"

In *Houston, etc., Co. v. Brown,* (*Tex. Civ. App.* 1902) 69 S. *W.* 651, the plaintiff's arm had been broken by the defendant company, and the physician of the company who attended him told him it had knitted together and that the arm was well. Relying on this the plaintiff settled and gave a release. The court found that the doctor made the representation for the purpose of inducing a settlement. In fact the arm had not knit and was practically useless. The court said the statement about the kintting of the fracture was not a matter of opinion but of fact. The fact that it was not intentionally false, and was an innocent misrepresentation, did not affect the right to a rescission. The release was not binding when given under such circumstances.

In *Nelson v. Chicago, etc., Ry. Co.,* (1910) 111 *Minn.* 193, 126 *N. W.* 902, the plaintiff had a broken leg and the attending physician expressed a mistaken but honest opinion as to the period within which the plaintiff, suffering from a known injury, would recover. The opinion had no connection with the settlement. A release relying on the statement was held to be valid, the court saying:

"The mistake related to the length of time probably required for recovery for a broken leg. It was not a misrepresentation or mis-statement relating to a past or a present existing fact."

Where the release given states the particular injuries compensated for, and there were other injuries unknown to both parties to the release, there is such a mistake of fact as will invalidate the release and equity will give relief against the use of the release to bar the claim for damages for the injury unknown at the time of the release. *Lumley v. Wabash R.*

*Co.*, 76 *Fed.* 66, *Union Pac. Ry. Co. v. Artist*, 60 *Fed.* 365, 23 *L. R. A.* 581. This principle would apply even if there were in addition general language following the description of specific injuries, for the general language would be held to refer to the specific injuries. In *Lumley v. Wabash R. Co.*, 76 *Fed.* 66, 71, the court said:

"We put our judgment upon the facts stated in this bill, to wit, that both parties supposed the complainant had received certain injuries, the extent and character of which were considered and discussed with reference to the time which the injured party would probably lose in consequence thereof. In such a case, if a release is given specifically mentioning the particular injuries known and considered as the basis of settlement, general language following will be held not to include a particular injury then unknown to both parties of a character so serious as to clearly indicate that, if it had been known, the release would not have been signed."

But there are cases which hold that where the release compromises and settles for all injuries known and unknown resulting from a particular accident, the discovery of other injuries unknown at the time of the settlement would not of itself be ground for setting aside the release. In the case of *Lumley v. Wabash R. Co.*, *supra*, the matter is thus stated:

"If one agrees that he will receive a given amount in satisfaction and settlement of his damages sustained through a particular accident, it is not essential that every possible consequence of the tort shall be mentioned, considered, or enumerated. The subsequent discovery by one giving such a release that he was worse hurt than he had supposed, would not, in and *of itself*, be ground for setting aside the settlement or limiting the release."

When the parties to the release deal at arm's length and the person injured has advice independent of that of the physicians of the releasee, then it may be a sound rule to adopt that a general release for all injuries, known and unknown received by a particular accident, which release does not specify particular injuries, would be binding though injuries unknown at the time of the release were afterwards discovered.

. The case of *McCarty v. Houston, etc., Co.*, 21 *Tex. Civ. App.* 568, 54 *S. W.* 421; (*s. c.* 94 *Tex.* 298, 60 *S. W.* 429, 53

*L. R. A.* 507, 86 *Am. St. Rep.* 854), was such a case.    There there was a general release substantially similar to that in the case before this court.    The only injury considered was a broken ankle, while in fact there were internal injuries unknown to all the parties.    It was held that because of the general form of the release it could not be set aside, there being no fraud and the releasor having had an equal opportunity to know the extent and character of his injuries.    The court said:

"In the face of such an instrument, it cannot be said that all injuries which might be developed as a result of the accident, known or unknown, were not in the contemplation of the parties to the instrument and were not embraced within its terms.

The court distinguished the case before it from *Lumley v. Wabash R. Co.*, because in the latter case certain injuries were specified and the general language of the release was held applicable to those named injuries.

In the case before this court there was an entire reliance on the physicians of the railroad company in the negotiations for the settlement, and but for their statements as to the extent of the injury it is but fair to say that the settlement would not have been made.    These statements as to the wound were untrue.    An innocent misrepresentation made by the physician of the releasee, relied on by both the releasor and releasee, as to the kind of injury received by the releasor may be effective to avoid a release induced thereby.    *Great Northern Ry. Co. v. Fowler*, 136 *Fed.* 118; Thayer J. in *Chicago, etc., Co. v. Wilcox*, 116 *Fed.* 913, 919; *Lumley v. Wabash R. Co.*, 76 *Fed.* 66; *Houston, etc., Co. v. Brown*, (*Tex. Civ. App.*) 69 *S. W.* 651; *McCarty v. Houston, etc., Ry. Co.*, 21 *Tex. Civ. App.* 568, 54 *S. W.* 421; *s. c., reversed*, 94 *Tex.* 298, 60 *S. W.* 429, 53 *L. R. A.* 507, 86 *Am. St. Rep.* 854.

A case in point is that of *Great Northern Ry. Co. v. Fowler, supra*.    There the complainant, a brakeman on the railroad, after being injured went with a claim agent of the company to the physician of the company, who found a scalp wound and a contusion of the shoulder and nothing more, but

8

told the injured man that he was practically well and would be-able to go to work in a week or two. Without other advice the complainant settled for an amount equal to wages he would lose, and bills for doctors and nurses. A release was given, which apparently was general in form, without specifying the injuries. Later it developed that the injuries were serious, the disability permanent and a dangerous surgical operation was performed. The Circuit Court of Appeals affirmed the decision of the Circuit Court annulling the settlement and release. The Appellate Court found that there was a mutual mistake as to the nature and extent of the injuries, and that the settlement was induced by the advice of the surgeon of the releasee without· other advice, and, therefore, that the release should be set aside. The court distinguished the case before it from one where there was no misrepresentation on the part of the releasee and the releasor simply relied on the opinion expressed by the physician of the releasee employed to examine and report on the injuries. Such a case was *Nelson v. Minneapolis, etc., Co.,* 61 *Minn.* 167, 168, 63 *N. W.* 486. Judge Gilbert thus distinguished:

"But it is equally true that a mutual mistake of fact or an innocent misrepresentation of the facts of the releasor's injury, made by the releasee's physician, may be effective to avoid a release induced thereby." *Great Northern Ry. Co., v. Fowler,* 136 *Fed.* 118, 121.

After reviewing a number of cases, the court said that all the cases cited by the appellant were in harmony with the view expressed by the court. Also the court in the case cited found that in *Kowalke v. Milwaukee, etc., Co.,* 103 *Wis.* 472, 79 *N. W.* 762, 74 *Am. St. Rep.* 877; *Seeley v. Citizens, etc., Co.,* 179 *Pa. St.* 334, 36 *Atl.* 229; *Homuth v. Metropolitan, etc., Co.,* 129 *Mo.* 629, 31 *S. W.* 903; and *Houston, etc., Co. v. McCarty,* 94 *Tex.* 298, 60 *S. W.* 429, 53 *L. R. A.* 507, 86 *Am. St. Rep.* 854, the releasor either did not rely on the representations of the physician of the company, or had advice independent of such physician. The decision in *Great Northern, etc., Co. v. Fowler, supra,* made in 1905, has not been reversed or criticised by any case in the federal courts, and indeed has not

been cited there. It should be noted that the exact character of the release, i. e., whether general in form, or relating to all injuries from the accident, or for specified injuries, does not clearly appear in the statement of the case last above cited and was not commented on.

In *Chicago, etc., Co. v. Wilcox, supra*, the court, reversing the court below, refused to annul the release, because there was no mistake of fact, but of opinion, or belief, as to a future event. Judge Thayer in concurring in the decision, the opinion being by Judge Sanborn, said the settlement should not stand if it was made "while the complainant was laboring under some serious mistake of fact, for which the railroad company was in some measure responsible." He agreed that the testimony did not bring the case within the rule. He further took the ground that if the releasor had been misled by statements of the physician of the releasee as to mere matters of opinion, or prophecy, the settlement was invalid, because of the confidential relation of the physician to the releasor.

The case of *McCarty v. Houston, etc., R. R. Co.*, 21 *Tex. Civ. App.* 568, 54 *S. W.* 421, was one where a passenger was injured and while ill was visited by the physician and claim agent of the company. The only injuries seemed to be a broken ankle. The physician's attention was called to severe pains in the back and bowels of the injured person, but the physician told the injured man that they would be well in six weeks. Relying on this statement, the release, general in form, was for all injuries from the accident without stating any particulars as to what the injuries were. Soon serious trouble with the spine and bowels of the releasor developed. It was sought to annul the release as a bar to an action for damages. The Court of Civil Appeals held that notwithstanding the form of the release, the misrepresentation of the physician of the company was sufficient to upset the settlement. On appeal the decision was reversed by the Supreme Court, because of the form of the release (see 94 *Tex.* 298, 60 *S. W.* 429, 53 *L. R. A.* 507, 86 *Am. St. Rep.* 854). It is significant that the reliance of the releasor on statements of the physician of the company was not certified to the Supreme Court in the

statement of facts and so was not considered by that appellate court. The decision in the court below is, therefore, entitled to be regarded as of more weight than that of the Supreme Court.

In *Great Northern, etc., Co. v. Fowler, supra*, the court noted that in the McCarty case on appeal it did not appear that the releasor relied upon the statements or examinations of the physician of the releasee and, therefore, distinguished it from the case there heard.

In the case of *Lumley v. Wabash R. Co.*, 76 *Fed.* 66, 70, the injured person was examined by the physician of the company which had caused the injury. It was supposed that the only injury was a broken arm, and when complaints were made of shoulder pains no examination of that part was made by the surgeon, who told the injured man that it was due to the broken arm and they were sympathetic pains. Based on these facts a release was given. Later a broken shoulder was discovered. The release was set aside. Judge Lurton, in giving the opinion, said there were two grounds of relief, and thus stated the first:

"If the existence of this injury was known or suspected by the surgeon of the defendant, it was his duty, under the facts stated in this bill, to have informed Lumley of the trouble. To say to him that the pain of which he complained was sympathetic, and was caused by the fracture below his elbow, was a positive misrepresentation of the truth, and an operative fraud. To say that Lumley ought not to have trusted or relied upon his opinions or representations, knowing that he was in the service of the company against whom he had a claim, is no answer. On the facts stated he knew that a release was being bargained for upon the basis of his opinion as to the extent and character of the injuries complainant had received, and the probable time he would lose from his occupation by reason thereof. He was under strong obligation to give his honest opinion upon a matter of professional knowledge, upon which he had every reason to know this ignorant man was implicitly relying."

Another ground for giving the relief sought is the mutuality of the mistake as to the kind of injury sustained by the complainant.

Notwithstanding the general terms of the release, the

case before this court is not one where it was sought to compromise and settle a general claim for all injuries resulting from a particular accident, known and unknown, but only those known to exist, as reported by the defendant's physician, on whose reports all parties to the negotiations and release rightly relied. If the physicians honestly supposed that the eye was only scratched on the surface, and not penetrated deeply to the retina, either because their examinations had been superficial, or for other reasons, then the case is one where the release is comprehensive enough to cover a matter of claim unknown to both releasor and releasee, and, therefore, not considered in the settlement. From such mistake, according to settled principles applicable to all mistakes of fact, instead of opinion, equity will relieve.

On both grounds, either of which is sufficient, the court should relieve the complainant from the consequences of the release.

It is undisputed in this case that the releasor and releasee depended on the statements of the physicians of the releasee as to the kind and extent of the injury; that the settlement was induced by these statements, made for that purpose; and that the statements were wrong. Under such circumstances, by all the cases which have been brought to the attention of, or examined by, this court, there exists such a clear mutual mistake as to existing facts, and not as to opinions, as should invalidate the release as a binding settlement, though the release be in form for all injuries received from the accident without specifying the injuries.

By her bill the complainant tendered herself ready to pay back to the defendant, or into court, if and as the Chancellor shall direct, the sum of $500 received by her guardian from the respondent at the time the release was executed. This is not an unqualified offer, but an offer to repay if so directed. No argument was made on this subject by counsel. Inasmuch as the settlement was made without a binding acknowledgement of liability by the defendant for the injuries to the complainant, but on the contrary the release states that the liability was not admitted and the settlement made

as a compromise, the complainant should repay to the defendant the sum of $500, or make a legal tender of such sum, as a condition precedent to the operation of the injunction, for it may result that the complainant would fail in her action at law for damages.

Let a decree be entered accordingly.