[Civil No. 3069. Filed November 23, 1931.]

[4 Pac. (2d) 1005.]

MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION, a Corporation, Appellant, v. VIRGINIA PITTMAN, Administratrix of the Estate of WILBUR C. PITTMAN, Deceased; 'Appellee.

Mr. G. W. Shute and Mr. Charles Bernstein for Appellant.

Messrs. McNabb & De Camp, for Appellee.

ROSS, J.—Wilbur C. Pittman brought this action against the Mutual Benefit Health & Accident Association to cancel a release of his accident insurance

policy, to reinstate such policy, and to recover as per its terms. Before trial the plaintiff died, and his wife Virginia Pittman, as administratrix of his estate, was substituted as party plaintiff.

On November 4, 1928, and while the policy was in full force, the insured, Wilbur C. Pittman, was severely injured in his back, or had his back broken, as alleged in the complaint, in an automobile accident. Under the terms of the policy, he was to receive the sum of $200 per month and certain hospital fees so long as he suffered a total loss of time from his business by reason of accidental injury. Beginning with November 4, 1928, up to and including August 4, 1929, the defendant paid the insured $200 a month and hospital fees amounting all told to $2,250. On September 7, 1929, in consideration of $840 paid him, the insured, as a compromise, released and discharged the defendant from all further liability under the policy or on account of said injury.

The grounds upon which the release is asked to be canceled are that the defendant's doctor falsely and fraudulently represented to the insured that he would be a well man in not more than five months, and thereafter partially disabled for not more than three months, and that he believed and relied upon such assurances and representations, whereas, as a matter of fact, he did not get well within five months, but at the end of that period was in a worse physical and mental condition than at the time of settlement.

Defendant insists that the settlement was a good-faith compromise of its liability, and should be upheld.

At the close of plaintiff's case, defendant asked for an instructed verdict on the ground that plaintiff had offered no evidence proving any misrepresentation, fraud or deceit in obtaining the release. This

motion was denied, and, under instructions, the case was given to the jury. The jury returned a verdict in favor of the plaintiff. The court entered judgment thereon for $1,960, the amount computed to be due under the policy after deducting the $840 paid for the release.

The defendant has appealed assigning as reasons therefor (1) the refusal of the court to grant its motion for an instructed verdict; (2) the insufficiency of the evidence to support the verdict and judgment; and (3) admission of evidence of the physical condition of the insured two years after the accident.

The first two assignments raise the same question. The evidence is not in conflict. The accident in which insured was injured occurred near Roswell, New Mexico. He was first taken to St. Mary's Hospital at Roswell, where he stayed two to four days. He was then removed to St. Joseph's Hospital at Albuquerque, New Mexico, and was a patient of Doctor Lovelace and his partner Doctor Elliott. After about a month, he went to St. Luke's Hospital in Denver, Colorado, and was there about a month under the care of Doctor Sevier, a noted bone specialist. He returned to Albuquerque, and, after a short stay, went to Letterman's General Hospital in San Francisco for two or three weeks. He was also a patient at the Veterans' Hospital, Whipple Barracks, Prescott, Arizona, for a short time. He made all these trips to different hospitals, so far as the evidence shows, unattended. Within a month after his injury he could, by bracing the injured part of his body with a cast, walk some.

On or about the latter part of July, 1929, a claim auditor of the defendant by the name of Shockey, living in Albuquerque, raised the question of the possibility of stopping payments for total disability, and induced the insured to let Dr. Rice, the defend-

ant's local doctor, examine him. Shockey, as the agent of the defendant, had been in touch with the insured from the time he first arrived in Albuquerque, and had attended to the details of making the monthly payments to him. At the time of making the July, 1929, payment, Shockey suggested that, since the insured was able to walk and was not continuously confined to his bed, he was no longer totally disabled from attending to his business, and that he should be willing to accept the payment for partial disability as provided in the policy, or the sum of $80 per month for three months. Doctor Rice made a thorough examination of the insured, taking X-rays, and "told him that within about five months he would be as well as he ever was."

Immediately after getting Doctor Rice's report the insured and the plaintiff, his wife, collaborated in drafting a compromise proposition in the form of a letter to be mailed to the defendant at its home office at Omaha, Nebraska, by the insured after he had gone to Shreveport, Louisiana, and obtained the advice of Doctor Willis, of the Willis-Knighton Clinic, "an old friend of his family." The insured then left Phoenix, to which place he and his wife had gone, for Shreveport. He was a patient of the Willis-Knighton Clinic for two or three weeks under the care of Doctor Willis. Under date of August 27, 1929, the insured wrote from Shreveport to the defendant at Omaha as follows:

"I wrote Mr. E. F. Shockey, Albuquerque, N. M. relative to an advance settlement of my claim, had a reply from him stating that he had forwarded the letter to you for reply. Have not had a reply from you up to this time. Am writing to know if it is possible for you to make such settlement at this time.

"I am under care of the Willis-Knighton Clinic, 2622 Greenwood road, Shreveport, La. My doctor, Dr. J. C. Willis Jr. advised me that I would be totally

disabled at least to the first of the year and partially disabled for several months after that, in fact, he states that I will not be able to return to my former occupation as lumber salesman for a year or so on account of the vibration of a car.

"The other Doctors advised me that I would be disabled for a year to eighteen months, but I am willing to take Dr. Willis' advice as a basis for an advance settlement. Five months @ $200.00 and 3 months partial disability @ $80.00 this would make a total $1240.00. Due to the fact that I am heavily in debt would be willing to settle my claim for $850.00 provided it will be made not later than September 9th as I have note coming due on that date.

"Trusting to hear from you at an early date, I am
"Yours very truly,
"[sgd.]   WILBUR C. PITTMAN."

"P. S.   Am enclosing Dr. Willis' letter to me at Albuquerque, N. M.

"[sgd.]   W. C. P."

The letter referred to in the postscript reads as follows:

"The Willis-Knighton Clinic.
"2622 Greenwood Road,
"Shreveport, La.
"August 6, 1929.

"Mr. W. C. Pittman,
"Albuquerque, N. M.
"Dear Mr. Pittman:

"I find no material change in this report from our findings except just stating it in a different way and more in detail. In my opinion you seem to be getting along very well especially as there is no absorption of the piece of bone pinched off at the time of injury, however, I would like to see some callus formation at the site of the injury. Perhaps this will develop later, or it is not time for it to be seen by the X-ray.

"I would certainly keep the brace on, that we had made for you, at all times, even when you go to bed to sleep. I had Dr. Barrow read the findings and he was of the same opinion as myself. So, I am of the opinion that it is just a case of sticking to it for a while longer.

"If I can be of any assistance to you in any way, I will be glad to do so and I hope that you will make steady improvement.

"Estimated period of disability, Jan. 1, 1930.

"Yours very truly,

"[sgd.]   J. C. WILLIS Jr."

Upon receipt of the above communications, the defendant accepted the insured's proposition and transmitted to him at Shreveport, Louisiana, the sum of $840, at which place, on September 7, 1929, the insured accepted such payment and executed a full and complete release of defendant from further liability on account of injury.

From the above statement of the evidence, it is seen that before the insured settled with defendant he had visited and secured the advice of the medical and surgical corps of five well-known hospitals, located in different parts of the country, and the prognosis of all of them apparently was the same, or nearly the same, as that of Doctor Rice, defendant's doctor. The plaintiff in testifying gave as the reason why the insured settled with the defendant the following:

"As far as the doctors' reports, they had been very favorable up to this time, and he (insured) thought in every respect by five or six months he would be a well man as Dr. Rice had said and to get a favorable settlement is what he should do."

It is, of course, obvious the insured did not act upon Doctor Rice's prognosis of his case.  On the contrary, he considered what all the doctors had said about the duration of his disability and the probability of his getting well, but was unwilling to take the prognosis of any of them until confirmed by the "old friend of his family," Doctor Willis.  It was at the latter's hospital he wrote the letter, his wife says she helped him draft, offering to settle for $850.  Therein he said, "I am willing to take Dr. Willis' advice as a basis for an advance settlement."  And it was at

such hospital he received the money and executed the release.

These doctors, including Doctor Rice, evidently thought the insured would get well, and, because of their assurances, he believed he would be well in ''five or six months.'' As a matter of fact, they were all mistaken in their opinions or prophecies. The insured did not get well, but, if anything, his ailments grew worse until he committed suicide on October 3, 1930. At no time after his injury was he able to attend to his business. In the absence of compromise and release, the insured would have been entitled to draw $200 per month as long as he lived.

The plaintiff contends that the facts bring this case within the rule laid down by this court in *Atchison etc. Ry. Co.* v. *Peterson,* 34 Ariz. 292, 271 Pac. 406. In that case, the evidence showed that Peterson was induced to sign the release upon the representation of the railroad's doctor that he would be all right within thirty days; that he found nothing wrong with him; and that he would be over his injuries in a short time. We upheld an instruction which, in effect, told the jury that if the railroad's doctor made such representations to the plaintiff, not knowing whether they were true or false, and the plaintiff relied upon them, and would not have executed the release except for such representations, the plaintiff would not be bound by the release, although there was no fraud or other wrongful intent on the part of the doctor to deceive or defraud plaintiff. We said of this instruction:

''It follows that the instruction is a correct statement of the law, for it is clear from the record that the jury was justified in concluding that appellee executed the release under the belief that his injury was not serious, that he would be all right within thirty days, *that this belief was brought about through the statement of Dr. Tyroler to that effect,* and that it

was not true. Whether it was made in good faith or with intent to defraud is immaterial; the effect upon appellee was the same, and under the authorities he would be entitled to relief upon the ground of constructive fraud or mutual mistake, even though his intention was not to deceive." (Italics ours.)

The difference in the two cases is considerable. In the present case, the evidence conclusively shows the insured did not rely upon Doctor Rice's prognosis, whereas in the Peterson case the injured employee did rely solely on the railroad's doctor. The insured would not accept Doctor Rice's statement as to his condition and the probable duration of his disabilities, and made his offer of compromise only after his friend Doctor Willis had "estimated period of disability (as) Jan. 1, 1930."

It seems to us that where a party has a claim against another, whether it grows out of contract or tort, and the amount thereof is contingent upon future events or developments of uncertain nature, he ought to be allowed to convert such claim, by way of compromise, into a cash settlement; and that when after a full and independent investigation by himself, uninfluenced by his adversary, he sets the price he is willing to take, and it is given to him, he should be bound thereby. And that is the situation here.

In the Peterson case, we held, in effect, that an innocent misrepresentation made by the physician of the releasee, relied on by both the releasor and releasee, as to the kind of injury received by the releasor, may be effective to avoid a release induced thereby, and we think this is in harmony with the cases. In *Tatman* v. *Philadelphia, B. & W. R. Co.,* 10 Del. Ch. 105, 85 Atl. 716, the court said:

"When the parties to the release deal at arms' length and the person injured has advice independent of that of the physicians of the releasee, then it may be a sound rule to adopt that a general release for

all injuries, known and unknown, received by a particular accident, which release does not specify particular injuries, would be binding though injuries unknown at the time of the release were afterwards discovered.''

See, also, *McCarthy* v. *Houston & T. C. R. Co.*, 21 Tex. Civ. App. 568, 54 S. W. 421; Id., 94 Tex. 298, 86 Am. St. Rep. 854, 53 L. R. A. 507, 60 S. W. 429.

In *Chicago & N. W. Ry. Co.* v. *Wilcox*, 116 Fed. 913, 54 C. C. A. 147, the court, after stating that it was the policy of the law to promote and sustain compromises and settlements of disputed claims, said:

'' . . . It is not every mistake that will lay the foundation for the rescission of an agreement. That foundation can be laid only by a mistake of a past or present fact material to the agreement. Such an effect cannot be produced by a mistake in prophecy or in opinion, or by a mistake in belief relative to an uncertain future event. A mistake as to the future unknowable effect of existing facts, a mistake as to the future uncertain duration of a known condition, or a mistake as to the future effect of a personal injury, cannot have this effect, because these future happenings are not facts, and in the nature of things are not capable of exact knowledge; and everyone who contracts in reliance upon opinions or beliefs concerning them knows that these opinions and beliefs are conjectural, and makes his agreement in view of the well-known fact that they may turn out to be mistaken, and assumes the chances that they will do so. Hence, where parties have knowingly and purposely made an agreement to compromise and settle a doubtful claim, whose character and extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happen very differently from the expectation, opinion, or belief of one or both of the parties.''

We think the general rule is, that a mere mistake of fact on the part of the parties to a release, in the absence of a showing of fraud, duress, undue influ-

ence, or mental incapacity, is not sufficient ground for the avoidance of the release.

The only ground here alleged for asking that the release be canceled is that the physican of the defendant represented that the insured would be well within five or six months. And, as we have before said, that seemed to be the prognosis of all the physicians who examined him. It was developed in the case on the part of the plaintiff that the insured, some time in December, 1929, was suffering from a broken back, an injured spine, and was also more or less mentally deranged, due, as the expert witness said, to the injury he received in the accident.

We would be inclined to apply the rule announced in the Peterson case, to the facts here, if it were not conclusively shown that the insured in making the compromise relied, as he says, upon "Dr. Willis' advice as a basis for an advance settlement." We think it would be a dangerous precedent to set aside a release made under the circumstances here disclosed.

We are of the opinion that the court erred in refusing to instruct a verdict upon the motion of the defendant, when the evidence disclosed that the parties were acting at arm's length, and the insured upon the advice of his own physicians.

The judgment is reversed and the cause remanded, with directions to dismiss the complaint.

McALISTER, C. J., and LOCKWOOD, J., concur.