Keila A. Rodriguez ALVAREZ,
Plaintiff Below, Appellant,

v.

William E. CASTELLON, Defendant
Below, Appellee.

No. 304, 2012.

Supreme Court of Delaware.

Submitted: Oct. 10, 2012.

Decided: Oct. 26, 2012.

Jonathan B. O'Neill, Esquire, Kimmel, Carter, Roman & Peltz, P.A., Newark, Delaware, for appellant.

Sean A. Dolan, Esquire, Law Office of Cynthia G. Beam, Newark, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice:

The plaintiff-appellant, Keila Rodriguez Alvarez ("Rodriguez"), appeals from a Superior Court order granting defendant's Motion for Summary Judgment. On appeal, Rodriguez argues that the trial court, by granting the motion, erred as a matter of law, because the parties had made a mutual mistake of fact about the existence and scope of her injuries resulting from an automobile accident. The record reflects that the unambiguous language of the release executed by Rodriguez is controlling and that there was no mutual mistake. Therefore, the judgment of the Superior Court must be affirmed.

### Facts [1]

This dispute arises out of an automobile accident that occurred on April 15, 2010, when William Castellon, the defendant-below ("Castellon"), rear-ended Rodriguez's car at a stop sign. After the collision, Rodriguez received medical treatment at a hospital and was released with pain medications. On April 20, 2010, Rodriguez executed, and furnished to Castellon's insurer (Nationwide), a release of liability in exchange for $1500. Before doing that, Rodriguez informed Nationwide that she was suffering from ongoing back and neck pain, and that she had sought treatment from her primary care physician ("PCP"). The record is unclear whether Rodriguez's PCP told her about the extent of her injuries. Rodriguez afterwards began experiencing pain in her right shoulder and arm, and in July 2010, a specialist diagnosed her with a herniated thoracic disc in her spine.

On February 18, 2011, Rodriguez filed a personal injury action against Castellon in the Superior Court. On February 7, 2012, Castellon moved for summary judgment, arguing that the release was a complete defense. Rodriguez responded that the release was voidable, because she and Nationwide had made a mutual mistake of fact regarding the existence and extent of her injuries at the time the release was signed. Rodriguez claimed that her right shoulder, arm, and herniated disk injuries were "materially different" from the minor soft tissue injury that the parties believed that she was suffering from when the release was signed.

The Superior Court held that absent a mutual mistake of fact by the parties, the clear language of the release was controlling. The release relevantly provided:

This Release is executed with the full knowledge and understanding on [Rodriguez's] part that there is likely to be, or may be, more serious consequences, damages or injuries than now appear, and that more serious and permanent injuries, even death, may result....

[Rodriguez] hereby declares and represents that the injuries sustained may be permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this Release and agreement, [Rodriguez] understands and agrees that [Rodriguez's] own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that [Rodriguez] has not been influenced to any extent whatever in making this release....

---

1. These facts are taken substantially from the Superior Court's opinion and order.

The Superior Court stated that if Rodriguez had suffered an injury materially different from what the parties believed her injuries were when the release was signed, a *prima facie* mutual mistake of fact would be made out. The Superior Court found, however, that the record did not support Rodriguez's claim that the parties believed she had suffered only minor soft tissue injuries at that time.

The record disclosed that Rodriguez was "aware of strong indications that she was injured, even though she did not know the exact degree of her injuries." Based on the undisputed facts of record, the Superior Court concluded that Rodriguez had made a unilateral mistake about the extent of her injuries, and that therefore the release was valid. The Superior Court also noted that Rodriguez had stated in her deposition that she thought the payment that she was accepting from Nationwide was for property damage to her car. The Superior Court found, however, that Rodriguez admitted that she had read the release before signing, and that Nationwide did not pressure her to sign the release. By order dated May 8, 2012, the Superior Court granted Castellon's Motion for Summary Judgment and dismissed Rodriguez's case.

### Standard of Review

The issue presented is whether the undisputed evidence discloses a mutual mistake of fact that would enable a court to set aside an otherwise valid general release of liability. This Court reviews *de novo* a trial court's decision to grant summary judgment.[2] We "draw our own inferences in making factual determinations and in evaluating the legal significance of the evidence."[3] Any undisputed facts, and reasonable inferences that we draw from those facts, must be viewed in the light most favorable to the nonmoving party.[4]

Delaware courts uphold contractually valid general releases.[5] A court may, however, set aside a clear and unambiguous release where there is fraud, duress, coercion, or mutual mistake concerning the existence of a party's injuries.[6] In *Tatman v. Philadelphia,* the Court of Chancery invalidated a release on grounds of mutual mistake.[7] It held that a mutual mistake "must relate to a past or present fact material to the contract and not to an opinion respecting future conditions as results of present facts."[8] Thus, a mistake about "the future unknowable effect of existing facts, . . . or a mistake as to the future effect of a personal injury" cannot be grounds for rescinding an agreement.[9] In *Tatman,* the Court of Chancery specifically held that:

> [W]here parties have knowingly and purposely made an agreement to compromise and settle a doubtful claim, whose character and extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happen very differently from the expectation, opinion, or belief of one or both of the

2. *LaPoint v. AmerisourceBergen Corp.,* 970 A.2d 185, 191 (Del.2009).

3. *Id.*

4. *Id.*

5. *Deuley v. DynCorp Int'l, Inc.,* 8 A.3d 1156, 1163 (Del.2010).

6. *Id.*

7. *Tatman v. Philadelphia, Baltimore & Washington R.R. Co.,* 85 A. 716, 718 (Del.Ch.1913).

8. *Id.*

9. *Id.*

parties.[10]

We agree with that holding and its rationale.

### Precedents Examined

 In *Alston v. Alexander*,[11] the injured plaintiff sought immediate medical treatment for head, chest, and hip pain after being involved in a car accident. The discharge instructions from the hospital informed the plaintiff of the "possibility" that her pain could worsen or persist, and stated that her hip injury was the "kind of injury" where it was "often impossible to tell for sure soon after the injury" whether additional treatment would be necessary.[12] One day after the accident, the plaintiff told the defendant's insurer that she had suffered head and leg injuries, and signed a general release in exchange for $500.[13]

Soon afterwards, the plaintiff developed neck and back pain, and sought to void the release by claiming a mutual mistake.[14] Affirming the trial court's grant of summary judgment for the defendant, this Court held that the plaintiff's "subsequent complaints were not indicative of a new injury, but rather were related to the original trauma."[15] We further noted that although the hospital had informed the plaintiff that it would be difficult to ascertain the extent of her particular injuries so soon after the accident, she nevertheless chose to execute the release soon after discharge.[16]

Seeking to distinguish *Alston*, Rodriguez argues that she did not receive any discharge instructions from the hospital, or any diagnosis or treatment from her PCP until several weeks after she had signed the release. Rodriguez further argues that her shoulder, arm, and herniated disk injuries were "materially different" from the back and neck injuries that she suffered immediately after the accident. The record does not support that argument. Here, as in *Alston*, Rodriguez's "subsequent complaints were not indicative of a new injury, but rather were related to the original trauma."[17] Like the *Alston* plaintiff who suffered head, chest, and hip pain immediately after the accident and later developed separate neck and back pain, Rodriguez originally experienced back and neck pain and was later diagnosed with a shoulder, arm, and herniated disk injury. Rodriguez's subsequent injuries were not "new." Rather, they were "related to the original trauma" caused by the car accident.[18]

In *McLarthy v. Hopkins*,[19] the plaintiff, after similarly sustaining injuries in a car accident, was admitted to the hospital and consulted her PCP several days later. She later signed a general release at a time when both parties knew that she was suffering ongoing pain, and was receiving medical treatment.[20] Seeking to invalidate the release, the plaintiff alleged that the parties had made a mutual mistake about

10. *Id.* at 718–19.

11. *Alston v. Alexander*, 2012 WL 3030178 (Del. July 25, 2012).

12. *Id.* at *1.

13. *Id.* at *1–2.

14. *Id.* at *3.

15. *Id.*

16. *Id.*

17. *Alston v. Alexander*, 2012 WL 3030178, at *3 (Del. July 25, 2012).

18. *See id.*

19. *McLarthy v. Hopkins*, 2011 WL 3055252 (Del. July 25, 2011).

20. *Id.* at *1.

the severity of her injuries.[21] We affirmed the Superior Court's grant of summary judgment for the defendant, holding that "both parties knew that her injuries had not been resolved, and in contemplation of the risk that [plaintiff's] pain and treatment would continue, the parties entered [into] a valid contract."[22]

Rodriguez argues that *McLarthy* is inapposite, because Rodriguez did not know the extent of her injury at the time she signed the release, and was not diagnosed with a herniated disk until afterwards. The record shows, however, that Rodriguez informed Nationwide that she was suffering ongoing back and neck pain at the time of the release signing. Therefore, Rodriguez has not meaningfully distinguished her case from *McLarthy*.

In *Hicks v. Doremus*,[23] a Superior Court decision, the plaintiff sustained back and neck spasms from a car accident, but told the defendant's insurer that she was "all right as far as she knew."[24] She then proceeded to sign a release in exchange for $150.[25] After signing the release, the plaintiff experienced additional back pain and was later diagnosed with a herniated disk that required surgery.[26] Seeking to set aside the release, she argued that the parties were mutually mistaken about the extent of her injuries at the time the release was signed.[27] Granting the defendant's motion for a directed verdict, the court concluded that there was, "[a]t a minimum[,] ... an *indicia* of injuries ex-

isting at the time plaintiff signed the release.... Although [plaintiff] may not have been aware of the exact degree of injuries with medical certainty, she testified to the existence of pain."[28] Notably, a "[m]utuality of mistake exists only where neither the claimant nor the insurance carrier is aware of the existence of personal injuries."[29]

Seeking to distinguish *Hicks*, Rodriguez contends that she never told Nationwide that she was "all right as far as she knew." She argues also that her right shoulder, arm, and herniated disk injuries were "materially different" from her back and neck pain.[30] That argument fails for the same reason that Rodriguez's effort to distinguish *Alston* was unsuccessful.

### No Mutual Mistake

In support of her mutual mistake claim, Rodriguez relies upon *Reason v. Lewis*,[31] where both parties erroneously believed at the time of the release that the plaintiff would soon no longer require any medical treatment. The plaintiff later developed a nerve injury that was unknown to the parties at the time of the release, which the court invalidated.[32] Here, in contrast, neither Rodriguez nor Nationwide believed that she was physically healthy after the accident. Rodriguez told Nationwide that she was experiencing ongoing back and neck pain. She also conceded that she

---

21. *Id.*

22. *Id.* at *2.

23. *Hicks v. Doremus*, 1990 WL 9542 (Del.Super. Jan. 8, 1990).

24. *Id.* at *1.

25. *Id.*

26. *Id.*

27. *Id.*

28. *Id.* at *2.

29. *Hicks v. Doremus*, 1990 WL 9542, at *2.

30. *Id.*

31. *Reason v. Lewis*, 260 A.2d 708 (Del.1969).

32. *Id.* at 709.

never believed that she was "all right" after the accident.

Given the undisputed facts and the clear and unambiguous language of the release, *Alston* and *McLarthy* are controlling. No mutual mistake of fact existed between the parties at the time that the release was signed. For that reason, the Superior Court properly granted summary judgment for the defendant.

### Conclusion

The judgment of the Superior Court is affirmed.