### GREAT NORTHERN RY. CO. v. FOWLER.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1905.)

No. 1,114.

RELEASE—VACATION—MUTUAL MISTAKE—EVIDENCE.

Plaintiff, a railroad brakeman, after being injured, was solicited by defendant's claim agent to make a settlement, and went with him to the office of defendant's physician, who, after an examination, either through mistake or to deceive complainant, minimized his injuries, and stated that he would be able to work in a week or two, whereupon plaintiff, without other advice, was induced to sign a release of all damages and demands on account of his injuries, in consideration of payment of doctor's and nurse's bills and his wages for such period of time. It developed, however, that plaintiff was seriously injured, requiring a subse-

quent hazardous and delicate surgical operation on the skull, and that he would probably never be able to resume his avocation. *Held*, that the release was executed by mutual mistake of the parties, and was subject to vacation.

[Ed. Note.—For cases in point, see vol 42, Cent. Dig. Release, § 31.]

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

The appellee was the complainant in a bill brought to set aside a settlement he had made with the appellant on March 20, 1902, for injuries which he received while in the employment of the appellant as a brakeman on its railroad. He alleged that on February 5, 1902, through the negligence and carelessness of the appellant in erecting telegraph poles with the cross-arms thereon so close to the track of its railway, he was violently knocked from a moving train, without fault on his part, and was hit on the side of the head by a cross-arm of one of said telegraph poles, and was rendered senseless, had his skull fractured, and received permanent injuries. He alleged further that a week after receiving said injuries, relying upon the inducements made by the claim agent of the appellant, he went with said claim agent into the office of the physician and surgeon of the appellant, where he was examined by said physician, and that after such examination, either through mistake, or for the purpose of deceiving the complainant, said physician diagnosed his case by saying that he was practically well, and would be ready and able to go to work in a week or two; that, in consequence thereof, he was induced to sign a release of all damages and demands on account of his injuries upon the payment of his doctor's and nurse's bills, and his wages for the said period of time during which he would be disabled from work, amounting in all to $195; that from the time of said injury until May 18, 1902, pus oozed out of the fracture of the appellee's skull, and, on his bending or leaning forward, he would become dizzy and blind, and fall to the ground or floor; that some months afterward he was compelled to undergo a hazardous and delicate surgical operation, having a piece of the skull which was pressing upon the brain removed, and ever since has been unable to perform any kind of work or labor. And the appellee brought into court and tendered the repayment of $195 which he had so received, with interest thereon. The evidence was that the settlement so made by the appellee with the appellant was made at the instance of M. J. Gordon, a claim adjuster of the latter, who went to the appellee's home for the purpose of negotiating such settlement. He testified that he asked the appellee what he thought the company ought to do for him in connection with his accident, and the latter said that he thought he ought to be allowed his time while he was laid up, and the witness replied that he would be willing to recommend that; and he directed him to come to Seattle, and told him he would have him examined by Dr. Eagleson, the appellant's surgeon in Seattle, and ascertain just how long he ought to be laid up before he went to work; that he would be allowed whatever time there was, and the doctor's and nurse's bills, if they were not excessive. The witness testified further that accordingly the appellee went to Seattle, and the witness took him up to Dr. Eagleson's office for examination, and had the doctor make an estimate as to how long he ought to be laid up before going to work, and that Dr. Eagleson gave an opinion that the appellee would be incapacitated for about two weeks. The witness added: "We calculated his time at the regular rate, and produced the doctor's bill, and the bill for nurse, and the amount of his time, and footed it up at $195. I filled the release papers in at $195; made a sight draft; attached the release papers. He executed the release and voucher. I went with him to the bank and paid him $195." The doctor's report was made upon a blank provided by the railway company, containing questions to be answered by the examining surgeon; and it contained, among others, the following questions and answers:

"(7) A. Give description, stating the parts injured and supposed manner of infliction.—Contused wound of scalp a little to the left of crown, and contusion of left shoulder.

"B. Will any permanent injury or deformity result? If so, what?—I think not."

"(14) How long will patient be disabled?—Will probably be able to work in two weeks."

Dr. Eagleson at that examination described the injuries as follows: "Contused wound of scalp a little to left of crown, and contusion of left shoulder." The release which was executed by the appellee described the injuries thus: "Divers injuries to my person and property by reason of while climbing down side of box car was struck by cross-arm on telegraph pole which would not clear me, causing a severe lacerated wound of scalp over middle parietal region and other injuries." Dr. Eagleson testified that Mr. Gordon, when he brought the appellee to him, asked him to look him over and see "what I thought his present condition was, and how soon I thought he could be able to go to work," and that in response he said, "In probably two or three weeks." The appellee testified, and it is not disputed, that Dr. Eagleson made an examination of him, lasting about 10 minutes; looked at his head; asked him a few questions; told him his injuries did not amount to much, and that he would be all right in about a couple of weeks. There was evidence that the injuries received by the appellee were far more serious and permanent than Dr. Eagleson found them to be; that the appellee sustained an injury to his brain and nervous system, resulting in traumatic neurosis, symptoms of which are accelerated pulse, pains in the head, inability to concentrate thought, forgetfulness, sleeplessness, numbness, impaired digestion, etc., and that while before the accident he was known to be a strong, well man, and never was known to be sick, immediately after the accident he was confined to his bed for a week, and for four or five weeks was confined to the house, during which times he was better on some days, and on other days worse, was weak and dizzy much of the time, with constant pain in his head, and that later he submitted to an operation on his skull, performed at the hospital, and after the operation he was confined to the hospital for a week or so; that thereafter he was removed to his home, and was several days there in bed, and was confined to the house for three weeks. There was expert evidence to the effect that the appellee's skull was injured, if not fractured, by the blow upon his head; that the periosteum was removed from a portion of his skull, leaving the bone bare, and that some months later he submitted to an operation whereby a piece of necrosed bone was removed; that it would be years before he could recover; that his injuries might be permanent; and that he placed his life in peril every time he undertook the employment of a brakeman. The court found that at the time of the injury the appellee was 30 years of age, a robust, healthy man, and that his present ailments were caused by the injury; that he is afflicted with traumatic neurosis, and is subject to fainting spells, and that he will be incapacitated for work for an indefinite time; that the sum of $195 so paid him was not reasonable or adequate compensation for a tortious injury of such magnitude; and that the evidence justified a decree annulling the settlement and release set forth in the bill.

L. C. Gilman, for appellant.

George H. Walker, Walker & Munn, and Robert Welch, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The evidence in the case convinced the trial court, as it convinces us, that the settlement was made under a mutual mistake of both parties thereto as to the nature and extent of the appellee's injuries. The appellee, in making the settlement, acted wholly upon the advice of the agent and surgeon of the appellant. The agent called on him for the purpose of procuring a settlement, and informed him that the com-

pany was willing to pay him, in full discharge of all demands for the injuries received, his nurse's and doctor's bills, together with his regular wages as brakeman for the time during which he would be incapacitated to work. The appellant's surgeon made an apparently cursory examination of the appellee's injuries, and found that they consisted of a wound of the scalp, a contusion of the shoulder, and nothing more, and expressed his opinion that the appellee would be ready to go to work again in two weeks. The appellee consulted no other physician as to the extent or probable duration of his injury. He was a sick man at the time when he made the settlement. He accepted the statement and opinion of the appellant's surgeon, and, on the basis of it, received $195, and signed the discharge. We entertain no doubt that such a release, executed under a mutual mistake of fact so induced by the appellant, should be set aside. It is true that where there is no misrepresentation or fraud on the part of the releasee, a releasor cannot subsequently avoid his release on the ground that his injuries were more serious than he thought them to be, even though his opinion at the time of making the settlement may have been based upon that of a physician employed by the releasee to examine and report on the extent of his injuries. Such was the case of Nelson v. Minneapolis Street Ry. Co., 61 Minn. 168, 63 N. W. 486, cited by the appellant herein. In that case the settlement was made on the opinion of the releasor induced by the opinion of the releasee's physicians that the injuries were not of a permanent character. The court said:

"The facts proved constituted no ground for a rescission of the contract of settlement and release. These physicians were not sent to settle plaintiff's claim or to advise her. The extent of their authority was to ascertain the nature of her injuries, and report the result to the defendant for its information. Any statements they may have made in response to plaintiff's inquiries as to the extent of her injuries were wholly outside of the scope of their agency."

But it is equally true that a mutual mistake of fact or an innocent misrepresentation of the facts of the releasor's injury, made by the releasee's physician, may be effective to avoid a release induced thereby.

A case directly in point is Lumley v. Wabash R. Co., 76 Fed. 66, 22 C. C. A. 60, decided by the Circuit Court of Appeals for the Sixth Circuit. In that case the complainant signed a release reciting that he had received a severe contused and lacerated wound on his forehead, right side, fracture of right arm between wrist and elbow, and various injuries and contusions, both internal and external. The release was from all actions, suits, claims, etc., arising from injuries so received, and any, every, and all results thereafter flowing therefrom. The gravamen of the bill of complaint was that the complainant had received an injury to his shoulder by breaking or dislocating, which permanently disabled him, and that, at the time of the examination made by the chief surgeon of the railway company, he had called the latter's attention to the pain in his shoulder, but was informed by the surgeon that the pain was purely sympathetic and was attributable to his fractured arm. The evidence was that this unknown and unsuspected injury was the principal injury sustained. The court said:

"If this surgeon honestly supposed the shoulder pain to be sympathetic, either because his examination had been superficial, or because he had made

none, we would then have a case where a release is comprehensive enough to cover a matter or claim unknown to both parties, and was therefore not the subject of consideration. Equity relieves from mistakes as well as frauds. The case is not one where it was sought to compromise and settle a general claim for all the injuries resulting from a particular accident, known and unknown. If one agrees that he will receive a given amount in satisfaction and settlement of his damages sustained through a particular accident, it is not essential that every possible consequence of the tort shall be mentioned, considered, or enumerated. The subsequent discovery by one giving such a release that he was worse hurt than he had supposed would not, in and of itself, be ground for setting aside the settlement or limiting the release. We put our judgment upon the facts stated in this bill, to wit, that both parties supposed complainant had received certain injuries, the extent and character of which were considered and discussed with reference to the time which the injured party would probably lose in consequence thereof. In such a case, if a release is given, specifically mentioning the particular injuries known and considered as the basis of settlement, general language following will be held not to include a particular injury then unknown to both parties, of a character so serious as to clearly indicate that, if it had been known, the release would not have been signed. This jurisdiction is well known, and has frequently been applied in cases of release affecting property rights, both in courts of law and equity."

In Houston & T. C. R. Co. v. Brown (Tex. Civ. App.) 69 S. W. 651, a release of damages for a broken arm was made by a railroad employé in reliance upon the statement of a physician acting for the railroad company, made for the purpose of inducing the execution of the same, that the bones of the arm had knitted together, and that the arm would be as good as ever. It was held that the release was not binding upon the employé, even though the statement of the physician was made in good faith. The court said:

"We cannot agree with the contention of appellant that it may escape liability on the ground that the representations and statements made by Stewart was a mere expression of opinion. It was more than an opinion. It was the statement of a fact. * * * It is true, this statement may have been predicated upon his opinion as a medical expert, but the opinion is based upon facts of which he possessed knowledge. The fact that the statement made by Stewart was not intentionally false does not affect the right of the appellee to have the release set aside, if he was misled by the statement, and executed the release, believing the statement was true. In such a case, innocent misrepresentations may as well be the basis of relief as where such statements are intentionally false."

The appellant relies on Chicago & N. W. Ry. Co. v. Wilcox, 116 Fed. 913, 54 C. C. A. 147. The plaintiff in that case had suffered a fracture of the femur. Her physician was also the physician of the railway company. She was told that it was a bad break, and was advised by the physician of the railway company that she would be incapacitated for at least a year; that the injury would be slow to repair, if it did repair, and that there was no certainty of her ever entirely recovering; and that such an injury resulted generally in permanent disability. When she talked of making a settlement, he advised her that the better plan would be to wait until she saw the extent of her injury. Disregarding this advice, she made a settlement with the railway company; and subsequently, finding that her injury was greater than she had supposed, she brought suit to set aside the settlement. The court, in the course of its opinion, said:

"But compromises and releases are not voidable on this account, for the reason that the parties to them know the uncertainty of these future events.

and, by the very fact of settlement before they develop, agree to take the chances of their effects. Their mistakes relative to the future duration of the disabilities and the future effects of the personal injuries that form the subject of their contracts are mistakes of belief, not of fact, and form no basis for the avoidance of their contracts. Such was the mistake under which the complainant labored. It was a mistake in the opinion of the doctor and in the belief of his patient with reference to unknowable future events. It was not a mistake of a past or of a present fact, and it presents no ground for a rescission of this release."

The difference between that case and the present case is apparent and is vital. In the Wilcox Case there was no mistake as to the nature of the injury. Mrs. Wilcox was not assured by the railway company's physician that she would be well within a year, or that she would ever recover. On the contrary, she was advised to await future developments before making a settlement. Her belief that she would recover, and the opinion of her physician that she might recover within a year, were matters of mere conjecture and opinion. In the present case there was a clear mistake of fact as to the nature of the injury. The appellant's physician believed, and so informed the appellee, that the injury to his head was a scalp wound, whereas it was a far more serious injury—an injury to the skull, causing necrosis of the bone, necessitating a surgical operation, and producing traumatic neurosis, effects that could not have resulted from a mere wound of the scalp.

All the decisions cited by the appellant are believed to be in harmony with the views we have above expressed. It is unnecessary to consider them all in detail. In Currier v. Bilger (Pa.) 24 Atl. 168, the court said:

"There was no mutual mistake of the parties as to any material fact. The only fact in the case was that the plaintiff's horse had been gored by the defendant's bull. As to this there was no mistake. Each party was fully informed."

In Kowalke v. Milwaukee Electric Railway & Lighting Co. (Wis.) 79 N. W. 762, 74 Am. St. Rep. 877, the plaintiff was injured by jumping from a car. She had her own physician, and was also examined by the railway company's physician. There was no mistake as to the injuries she received. The mistake was as to her pregnancy at the time. She informed the physicians that she was not pregnant, and refused to submit to an examination. The court said:

"Where a party enters into a contract, ignorant of a fact, but meaning to waive all inquiry into it, or waives an investigation after his attention has been called to it, he is not in mistake, in the legal sense."

In Seeley v. Citizens' Traction Co. (Pa.) 36 Atl. 229, the plaintiff, on her own motion, made the settlement; being ignorant of the character and extent of her injuries, but not relying on any statement of the defendant or examination by the defendant's physician. In Homuth v. Metropolitan St. Ry. Co. (Mo. Sup.) 31 S. W. 903, the plaintiff's wife was injured on the defendant's railroad track. The defendant's physician called on her, and, in answer to her question, said he thought her foot would be well in 14 days. Her own doctor, who was present, expressed a similar opinion, and settlement was effected on that understanding. Here it is clear that there was no mistake of fact, but a mistake of opinion, and that presumably the plaintiff relied on the opin-

ion of her own physician. The case most nearly approaching in its facts the case at bar is Houston & T. C. R. Co. v. McCarty (Tex. Sup.) 60 S. W. 429, 53 L. R. A. 507, 86 Am. St. Rep. 854. In that case the appellee was hurt in a wreck upon a railroad. It was supposed that his only injury was a dislocation of the ankle. He made a settlement of his claim against the railway company in full of all injuries. No other injuries were considered by the parties to the settlement, and the appellee relied upon no examination or opinion of the appellant's physician. The court said:

"Neither the appellant's agents nor appellee knew or suspected injury to another part of appellee's person, and appellee exercised reasonable care to ascertain if he was otherwise injured."

It transpired that he had suffered severe internal injuries. The court sustained the release, and distinguished the case from Lumley v. Wabash R. Co., supra. The facts that the appellee in the McCarty Case exercised reasonable care to ascertain if he was otherwise injured, and that he relied upon no statement or examination of the appellant's physician, are sufficient to distinguish it from the present case.

The decree of the Circuit Court is affirmed.