GEORGE REDDINGTON, Appellee, v. BLUE & RAFTERY, Appellants.

**MASTER AND SERVANT:** Negligence Per Se—Violation of Statu-
1 tory Duty. The violation of a statute imposing a duty is negligence *per se.*

   PRINCIPLE APPLIED: One injured by unguarded or insufficiently guarded machinery, under Sec. 4999-a2, Supplement to the Code, 1913, shows prima-facie right to recovery, to escape which defendant has the burden to show that no guard was practical which was reasonably calculated to prevent accidents.

**MASTER AND SERVANT:** Negligence—Violating Statutory Duty
2 —Custom as Defense. Custom will not justify a departure from the command of a statute.

   PRINCIPLE APPLIED: Plaintiff was injured in operating an unguarded machine. Defendant sought to show what other like factories did and the custom among them as to guarding like machinery, and as to whether certain additional guards were on the market. *Held,* incompetent under our Factory Act, Sec. 4999-a2, Supplement to the Code, 1913, requiring machinery to be guarded.

**MASTER AND SERVANT:** Factory Act—Rights and Duties under—
3 Instructions Law of Case. Instruction, defining rights and duty under Factory Act, Sec. 4999-a2, Supplement to the Code, not excepted to, declared law of the case.

**RELEASE:** Right to Rescind—Mutual Mistake. A written release
4 of a valuable right or subsisting cause of action may be repudiated on the ground of mutual mistake.

PRINCIPLE APPLIED:   Plaintiff, having been injured, for a consideration of $30 released defendant, in writing, from all liability, both parties at the time mutually believing that the injuries were only temporary.  The injuries proved to be permanent. The release was not really intended as compensation for personal injuries, but for loss of time, but the broad language of the release in fact led the parties into an apparent agreement not intended.

RELEASE:   Mutual Mistake—Avoidance at Law.   The avoidance of a release on the ground of mutual mistake may be had in an action at law.

RELEASE:   Avoidance—Mutual Mistake—Extent of Proof to Show. Whether instructions in instant case on extent of proof to establish right to avoid required excess of proof from plaintiff, *query.*

RELEASE:   Avoidance, Terms of—Return of Consideration Received —When Not Necessary.   A release may be avoided for mutual mistake without returning the consideration received for the release, when it appears that the consideration was given to the injured party for known and acknowledged injuries and for nothing else.

EVIDENCE:   Release—Avoidance—Intention—Consideration.   On the question of the right to avoid a release, the consideration therefor may be inquired into as bearing on the intentions of the parties.

RELEASE:   Avoidance—Mistake as to Injuries—Plaintiff's Knowledge.   On the question of the right to avoid a release for mutual mistake as to the extent of plaintiff's injuries, he may testify as to what knowledge he had of his injuries and what his physician said to him in relation thereto.

*Appeal from Montgomery District Court.*—HON. THOMAS ARTHUR, Judge.

WEDNESDAY, DECEMBER 16, 1914.

ACTION at law to recover damages for injuries received by plaintiff while working about a machine in the defendant's factory.  Trial to a jury.  Verdict and judgment for plaintiff. Defendants appeal.—*Affirmed.*

*Denver L. Wilson, Thomas W. Keenan,* and *Ralph Pringle,* for appellant.

*McKenzie & Cox* and *W. C. Ratcliff,* for appellee.

DEEMER, J.—Defendant is a partnership, conducting a bottling works in the city of Red Oak, Iowa, and in its plant it had a machine known as the Crown Soda Capping machine. Plaintiff was employed to work with this machine, and, while in the discharge of his duties, a glass bottle, which he was filling, burst, and some of the pieces of glass struck his left wrist, about four inches above the hand, severing the tendons, arteries, and nerves, and producing what he claims are permanent injuries. It was alleged that defendant was negligent in not properly guarding the machine on the left side thereof, through which the bottles were inserted, and that this was the proximate cause of the injury.

Defendant denied all negligence on its part, alleged that, if the machine was not guarded, it was due to plaintiff's own fault and neglect, pleaded contributory negligence and assumption of risk, and also pleaded a compromise and settlement with plaintiff for all the injuries he (plaintiff) sustained. In reply, plaintiff denied all affirmative allegations of the answer, and pleaded that the agreement of settlement and compromise was without consideration, and that it was signed under a mutual mistake of fact as to the nature and extent of his injuries, and further alleged that the settlement was not in fact, and was not intended to be in compromise or settlement of anything more than plaintiff's loss of time. On these issues, the case went to a jury, resulting in a verdict for plaintiff in the sum of $1,000.

The machine which it is claimed caused the damage is a bottling and capping implement, and had a guard immediately in front of the operator to prevent injury from flying glass; but on the left side, where the bottles were inserted, there was no guard. The machine is difficult of description, and we here show what we understand to be a photograph of it.

The (Foot) Crown Soda Machine.

The following testimony shows the nature of the guard and the manner in which the machine was operated:

"The machine stands about four feet high, has a head on it which works up and down with a spring and foot lever. When you push the lever down, it pulls the head of the machine down. You put your bottles in on the left-hand side, and the left-hand bottle is being filled with syrup while the right-hand one is being filled with water. There is a lever on the top which distends the rubber which fits around the neck of the right-hand bottle so that the water can't get out on either side of the bottle. On this left-hand side is a lever pointing to-wards me. You turn it around so that it runs the water into

the bottle; turning it around a little further lets the gas out of the bottle. You turn the lever back when the bottle is full, put your foot down with quite a force to pull the head of the machine down to crimp the cap on the bottle, then with your right hand you take it out and with your left hand slip in another bottle, then the same operation. There is a cup in front of the machine to hold caps. After a bottle has been filled you take a cap out of this cup and place it up in the machine with your finger. The cap is to seal the bottle and is the latest invention for pop. It is tin with a cork lining. When this left-hand lever is around on the water valve so as to run water into the bottle, it would be a couple of inches above the bottle and four or five inches out to the side; then you would turn it on around to let the gas out and bring the lever back and crown the bottle. You keep your left hand on that lever to turn it off when the bottle is full. When I began work, there was a little guard five inches by seven inches fastened to the head of the machine that works up and down with the head of the machine between the operator and the bottles; that is, between you and the bottles. There was no other guard except that. When I would fill the bottle with my left hand, it would be exposed to the bottle on the other side of the guard from me. When my left hand was in that position for filling the bottle, there was another bottle setting there between my hand and the one being filled. The 5x7 guard did not extend around so as to be between my left hand while filling the bottle and the bottle that was being filled with water. The bottles are filled with carbonated water under a pressure of sixty pounds to the square inch. The bottles sometimes break and fly in all directions—sometimes as far as thirty or forty feet. The 5x7 guard and the head of the machine would protect me from these flying particles. The pressure on the inside causes the bottles to explode. These bottles were the latest improved bottle and are the ordinary pop bottle. We used a pressure of sixty pounds to the square inch.

"On the afternoon of July 6th, I went to fill a bottle, and in putting the lever here (indicating) on the bottle and running the first water into the bottle, a round piece flew out between my hand and the guard and cut into my wrist. My left hand was holding the lever on the water valve running the water into the bottle. The bottle was about half full of water, and the balance was gas. My hand was about two inches above the bottle and four or five or six inches to the side. The machine was guarded just as it was when I first started work there. The piece of glass was round, and about the size of a half dollar, and went into my wrist to the bone and out again."

This witness also testified:

"There was a guard on the market at the time of the injury, to be placed around those bottles to prevent the glass flying from breaking bottles. That fits the kind of machine I was working on. It is an automatic guard. It works on the head of the machine. When the foot lever is put down to pull the head of the machine down, that closes up around the bottle so that it would enclose the bottle, so if one would burst to pieces it couldn't get away; it would have to stay there; and you take your foot off the lever and let the head of the machine raise, and that opens up. When the head of the machine is up to where it is when you put the bottles in, the guard is open clear back, and when you put the bottles in, and are ready to fill them, and push your foot down on the lever, and pull the head of the machine down to the bottles to fill it, they come shut of their own account, as the head of the machine comes down to the bottle. The guard opens up as the head of the machine raises as you take your foot off. That is a different guard from the one that was on the machine in question. . . . At the time of the accident, I had never seen any of these guards advertised. I didn't know of either of these guards at that time, but I thought it might be possible to invent something that would go on there and be a guard. I had never worked

on a machine that had a guard of that kind on it. I have had enough experience to know that the guard closes when you work the foot pedal and not when you work that rod with the right hand. I have had enough experience to know you can't close it by working the right hand. It couldn't possibly be connected by any kind of a device to the left-hand lever. It could be attached to the foot lever with a rod running down through there through the base of the machine."

With these premises, we go now to the propositions relied upon for a reversal. Our factory act provides that:

"It shall be the duty of the owner, agent, superintendent or other person having charge of any manufacturing or other establishment where machinery is used, to furnish and supply or cause to be furnished and supplied therein, belt shifters or other safe mechanical contrivances for the purpose of throwing belts on and off pulleys, and, wherever possible, machinery therein shall be provided with loose pulleys; all saws, planers, cogs, gearing, belting, shafting, set screws and machinery of every description therein shall be properly guarded." (Code Supp. Sec. 4999-a2.)

1. MASTER AND SERVANT: negligence *per se*: violation of statutory duty.

Under this section, we have held, contrary to defendant's assumption in argument, that the statute is mandatory, and that such a machine as that in question must be guarded, and that if it is not guarded, or if the guard is inadequate, or insufficient, this makes a prima-facie case for the plaintiff; and the burden is upon the defendant to show that no guard was practical which was reasonably calculated to prevent accidents. *O'Connell v. Smith,* 141 Iowa 1; *Kimmerle v. Dubuque Co.,* 154 Iowa 42.

There is a conflict in the decisions upon the proposition, but the doctrine already approved by us has support in other jurisdictions and is evidently the only one which gives life and efficacy to the statute. See *Caspar v. Lewin,* 82 Kan. 604, and the authorities cited in *Kimmerle's* case, *supra.*

II. Defendant offered to show what other bottlers did, what the custom was with reference to guarding such machine, whether additional guards were used by other bottlers in the state, and as to whether any additional guards were on the market; but the trial court sustained objections to the testimony. In this there was no error. *O'Connell v. Smith,* 141 Iowa 1. See, also, *Callopy v. Atwood,* 117 N. W. (Minn.) 238.

**2. MASTER AND SERVANT: negligence: violating statutory duty: custom as defense.**

III. In this connection, and with respect to defendant's liability, the trial court instructed in part as follows:

"You will remember what the evidence shows as to the character and extent of the guard which was on the machine at the time of the accident, and if you find that the guard on the machine at the time of the accident was a proper guard, as contemplated by the above statute, then there was no negligence on the part of the defendant or any one in not further guarding the machine.

**3. MASTER AND SERVANT: factory act: rights and duties under: instructions: law of case.**

"In this connection you are instructed that to properly guard the machine in question would be to provide such a guard as would be fit, suitable, and appropriate to reasonably protect the operator of the machine from being harmed or injured from the bursting of a bottle when he was filling it with gas and fluid in the usual and ordinary course of his running of the machine, so far as practicable, without unreasonably interfering with the efficiency of the machine.

"The burden is on the plaintiff, in the first instance, to show that the machine in question was not guarded in the respects complained of in his petition; and, if you find that the machine was not guarded in the respects complained of by plaintiff, then you will need to determine whether or not it could be further guarded in said respects without materially and unreasonably interfering with the efficiency of the machine. If it cannot be thus further guarded, then it is not incumbent upon defendant or anyone else to place an additional guard upon it.

"The burden, however, is upon the defendant to show the impracticability of further guarding the machine, if you find that such machine should have been further guarded, to make it reasonably safe.

"You will bear in mind that, while it is required by the statute above set out that machinery must be supplied and equipped with proper guards to protect the operator from injury, the master is not required to furnish machinery which is absolutely safe, so that an accident cannot happen. He is only required to provide proper guarding, that is, fit, suitable and appropriate guarding, as will reasonably accomplish the purpose of guarding, and such as is practicable, and such as will not unreasonably interfere with the efficiency of the machine."

These instructions were not challenged by exception at the time they were given, and they are the law of the case.

IV. After the accident, plaintiff was taken by defendant to a physician, who cared for the wound, and at the end of five weeks, he returned to work. In the meantime, he was paid his regular salary every Saturday night, and

4. RELEASE: right to rescind: mutual mistake.

the defendant also paid the physician's bill. After working about a week, plaintiff and one of the members of defendant firm had some talk about a settlement, and they went to a bank, and there plaintiff signed the following paper:

"Whereas, I, George L. Redington, of the City of Red Oak, County of Montgomery, and State of Iowa, was injured on or about the 6th day of July, 1912, while in the employ of Blue & Raftery, under circumstances which I claim render my said employers liable to me in damages; and

"Whereas, my said employers deny any liability for said injury; and whereas, both parties desire to compromise, and have agreed to adjust and settle the matter for the sum of $30:

"Now, therefore, in consideration of said sum, which it is hereby acknowledged has been to me or in my behalf paid

by my employers, I do hereby compromise said claim and release and forever discharge my said employers, their agents and employees, from any and all liability by reason of said injuries. Employment has not been promised me as a condition of this settlement.

"Witness my hand and seal this 17th day of August, 1912, at Red Oak, Iowa.

"George Redington.   [Seal.]

"W. J. Roberts,
"F. J. Brodby,
    "Witnesses."

This is the release pleaded by defendant in its answer. Plaintiff claimed and introduced testimony to show that this was executed through mutual mistake as to the character of his (plaintiff's) injury; that it was not given for money at that time paid, but as a receipt for part payment of what was the equivalent of wages, in order that defendant might settle with an indemnity insurance company; and that all he was being paid was for loss of time. One of the defendants testified that the payment of the $30 was for two weeks' work, and that was all he had in mind in taking the release. There is also testimony to show that both parties regarded the injury as temporary, whereas the testimony now shows that it is permanent. The trial court gave the following instructions with reference to this release:

"To avoid the written release in question and warrant you in holding it for naught as a defense in this case, the burden of proof is upon the plaintiff to show by the evidence the following matters: That, when the release in question was executed by the plaintiff and delivered to the defendant, that this plaintiff and the defendants entered into such compromise and settlement under a mutual mistake of fact; that both parties were wholly and unconsciously ignorant of the nature and character and extent of plaintiff's injury, and that it was not contemplated by the parties, or either of them, that the settlement and compromise compensated plaintiff or was in fact a

settlement and compromise, for injuries sustained, other than
the loss of time for a short period; that, at the time of the
execution of said release, the plaintiff and the defendant did
not know, contemplate, or consider the nature and extent of
the injury, and that such settlement and compromise was made
with total and unconscious ignorance that the nerves in plain-
tiff's wrist, which administers to the little, the ring, and par-
tially to the second finger, was severed and destroyed, and
that the tendons attached to and controlling the second, third,
and little fingers of the left hand had become adhered and
contracted; and that all that was contemplated, intended, and
considered and agreed in such settlement and compromise, at
the time such release was signed, by the plaintiff, was the pay-
ment for loss of time for a period of five weeks, and that all
that was considered and agreed in such settlement and com-
promise, at the time the release was signed, by the defendants,
was the payment for loss of time for a period of five weeks, or
some portion thereof, or that the defendants, or either of them,
that is, either of the members of defendant firm, by their
conduct or anything they said to the plaintiff at or before the
release was signed, induced the plaintiff to believe that, by
signing such release, he was only receipting for compensa-
tion for a few weeks' loss of time; and it must appear that
the agreement, as signed, did not contain the real, actual, and
intended agreement of the parties.

"The burden is upon the plaintiff to show such matters
by the evidence. Ordinarily, in a civil action, such as this is,
the parties on whom the burden of proof is cast is only required
to make proof by a fair preponderance of the evidence. In
this case, the plaintiff must prove the foregoing matters by a
preponderance of the evidence, and the character of the evi-
dence must be clear, convincing, and satisfactory concerning
the above-mentioned matters so necessary to be proven, and
that the agreement and release in question did not truly con-
tain or express the real agreement of the parties.

"If all of the above-mentioned matters are thus shown,
the release in question will be avoided, and you will hold it

for naught and proceed with further investigation of the case before you, under the instructions hereinafter given you. But, if all such matters above set forth are not so established, then you will proceed no further with the consideration of the case, but will return a verdict for the defendant."

This instruction is challenged on many grounds. One is that the release cannot be avoided in an action at law, and that plaintiff's only remedy was to go into a court of equity to have the same reformed or rescinded. There is nothing in this point. Under our liberal rules of procedure, it was proper for plaintiff to avoid the release by proof of fraud or mistake. *Rauen v. Prudential Ins. Co.*, 129 Iowa 725; *O'Brien v. Railroad Co.*, 89 Iowa 644.

**5. RELEASE: mutual mistake: avoidance at law.**

Next it is contended that there was no such testimony as to mutual mistake as to justify the instruction. With this we cannot agree. There was testimony in support of each and all of the matters referred to in the instruction, and that it announced correct principles of law, unless it be in putting too great a burden upon plaintiff, seems to be settled by the cases. See *Great Northern R. R. v. Fowler*, 69 C. C. A. 106; *Lumley v. Railroad*, 22 C. C. A. 60.

**6. RELEASE: avoidance: mutual mistake: extent of proof to show.**

Again, it is argued that plaintiff could not rescind or repudiate the contract without returning the consideration received therefor. Under well-settled rules, no return or offer to return is necessary in case a settlement is obtained by fraud; and while in some cases of mistake a return is necessary before rescission may be had, as in *See v. Coal Co.*, 159 Iowa 413, and *Kelly v. Railroad*, 138 Iowa 273, yet this doctrine does not apply to all cases of mistake. If nothing was received in virtue of the settlement and compromise, as the testimony tends to show in this case, or if money was paid, and it was given for injuries in fact received, and was not intended to cover anything else, but by

**7. RELEASE: avoidance: terms of: return of consideration received: when not necessary.**

reason of mutual mistake the agreement was made to cover injuries not contemplated by either of the parties, then no return of the money received is necessary. An injured party, in such circumstances, is entitled to keep what he has received, and is not required to tender it back. His remedy, if in equity, would be reformation and not rescission, and it is never incumbent on one who seeks reformation of a contract in equity to return the consideration. In this respect, the case is distinguishable from *See's* case, *supra*. Our conclusion finds ample support in the authorities. See *Meyer v. Hass*, 126 Cal. 560; *Lumley's* case, *supra; Bliss v. Railroad*, 160 Mass. 447; *Wabash R. R. v. Brown*, 13 C. C. A. 222.

The money paid is either to be treated as a mere gratuity or as compensation for known and acknowledged injuries; and in neither case is a return necessary, where the written release is executed by mutual mistake as to the nature and character of plaintiff's injuries, and was not intended to cover more than temporary disabilities. In other words, what plaintiff needs is a reformation rather than a rescission of the instrument of settlement or release.

As the instrument is a technical release, it is doubtless true that it cannot be avoided for want of a consideration, but the nature of the consideration may be shown as bearing upon the intent and purposes of the parties, with other admissible testimony upon the issue of mistake. These facts clearly distinguish this case from those relied upon by appellant, and especially the *See* case, *supra*.

8. EVIDENCE: release: avoidance: intention: consideration.

V. Some rulings on testimony are complained of. Plaintiff was permitted to show what the doctor told him as to the nature of his injuries. This was admissible, not for the purpose of binding defendant, but as showing plaintiff's knowledge of the extent of his injuries, and his mistake as to the character thereof. Other rulings complained of seem to be correct, or without any prejudice to appellant.

9. RELEASE: avoidance: mistake as to injuries: plaintiff's knowledge.

No prejudicial error appears, and the judgment must be, and it is—*Affirmed.*

LADD, C. J., GAYNOR and WITHROW, JJ., concur.