J. F. MALLOY, Appellant, v. CHICAGO GREAT WESTERN RAILROAD COMPANY, Appellee.

RELEASE: **Unintentional Misstatement of Present Fact.** A statement by a physician that an injured party "was all right to go to work," "was all healed up," "was just as good as ever," based on the injured party's apparent condition, and on the history of his injury, is a statement of *present fact*, and, if untrue, even unintentionally so, is sufficient to avoid a release entered into in full reliance that such statement was true.

RELEASE: **Release at Law.** The avoidance of a release on the ground of mutual mistake may be had in an action at law.

RELEASE: **Return of Consideration.** A release may be avoided for mutual mistake *without returning the consideration received* for the release, when it appears that the consideration was given to the injured party for known and acknowledged injuries, and for nothing else,—i. e., loss of time. And evidence is admissible to show for what the consideration was given.

APPEAL AND ERROR: **Belated Objection to Pleading.** Inconsistency in pleading both fraud and mutual mistake in avoidance of a release may not be urged for the first time on appeal.

RELEASE: **Fraud—Jury Question.** *Semble*, that a positive statement by the physician of a railway company, untrue in fact, that an employee "was as good as ever," made with full knowledge that the statement would be used as a basis for settlement with the company, is sufficient to carry to the jury the issue of fraud in the subsequently executed release.

*Appeal from Webster District Court.*—R. M. WRIGHT,
Judge.

JANUARY 27, 1919.

ACTION to recover damages resulted in a directed ver-
dict for defendant and judgment thereon.    Plaintiff ap-
peals.—*Reversed.*

*H. W. Stowe* and *Mitchell & Files,* for appellant.

*Carr, Carr & Evans* and *Price & Burnquist,* for appellee.

LADD, C. J.—I.   The plaintiff was in the employment of
defendant, in the evening of March 17, 1915, as one of the
helpers in a switching crew.   At about 10:30 o'clock, he
attempted to get on a car, for the purpose of switching the
same and placing it in a train which was being made up.
The car was of a style known as the "Gondola" or Hart
Convertible.   The sides of the car are fastened with hinges
at or near the top, with clasps at the bottom.   When the
clasps are broken or unfastened at the bottom, the sides
swing outward: that is, when lifted by hand, or swung by
a movement of the car.   The car, at the time, was moving in
a southeasterly direction, and, while carrying a lantern in
his right hand, plaintiff put his foot on the sill-step in the
right-hand side and at or near the front, and took hold of
the side handrail with his left hand, and attempted to
mount the car.   As he did so, one of the seven doors con-
stituting the side of the car swung out, caught him, and
broke his hold; and, in his words, "My foot struck the
ground, and I hung with this hand, and it jerked."

The petition alleged that, in falling, he sprained and
lacerated the ligaments of his side, and ruptured a blood
vessel or vessels in his lungs; that these injuries were caused
by the negligence of the defendant, in permitting the car
to be handled with the sides unfastened, knowing that, in

such condition, it was dangerous, in failing to warn plaintiff of its dangerous condition, and in permitting to so remain thereon a sill-step of dimensions of that used; that, in attempting to go on the car, he pursued the customary method; and that his injuries were permanent: and it prayed recovery of damages suffered.

The answer admitted the employment, and that plaintiff was injured; but put the other allegations in issue, and pleaded that, on or about June 15, 1915, the parties hereto compromised the claims sued on, and that, in consideration of $450 paid him, plaintiff released all claims for damages; and prayed to go hence with its costs.

In reply, plaintiff pleaded that the alleged settlement had been obtained by fraud, and also that it was obtained in consequence of a mistake.

At the close of the evidence, defendant moved the court to direct a verdict in its favor, for that: (1) The evidence failed to show that the condition of the car, as alleged, had existed for such length of time as that defendant was charged with notice, and in the exercise of ordinary care must have repaired same prior to the injury; (2) the evidence was insufficient to show that the compromise was void by reason of fraud; (3) the mistake, if any, was insufficient to set the compromise contract aside, or to render it invalid; and (4) the evidence failed to show any mistake in plaintiff's condition as it in fact was. This motion was sustained, and the only issue presented in this case relates to the sufficiency of the evidence to raise an issue for the jury as to whether the settlement was based on fraud or mutual mistake.

In order to establish the alleged fraud and mistake, the plaintiff has testified to the injuries, as alleged, and to his treatment, first by Dr. Wasen, and afterwards by Dr. Saunders, of Ft. Dodge, and to having spit blood after the injury continually, except for three weeks, and related that

the agent of the defendant at Ft. Dodge handed him a note dated June, 1915, from the superintendent, saying: "Please tell Malloy to come to Oelwein whenever he is ready, and get me by calling Jess Beale's residence on phone." Later, in the same month, he telephoned the agent to communicate a similar message to plaintiff, and on the 15th of the month, requested the agent to "phone Malloy to come to Oelwein at any time, now." Following this last communication, the plaintiff called on Doctor Saunders, the company's physician at Ft. Dodge, and informed him that the superintendent had sent for him, and inquired of the doctor concerning his condition. Plaintiff testified that the doctor said:

" 'Did Kinzey send over after you?' and I said, 'Yes, sir.' 'Well,' he said, 'You are all right to go to work now.' He said, 'You are all healed up and everything. When did you spit any blood?' I said, 'I have not spit any blood for about three weeks, I think.' 'Well,' he said, 'you are all right then; but,' he said, 'if you ain't in any hurry, it would be all right to rest a few days longer.' 'Well,' I said, 'what would you call a few days, Doctor?' 'What would you say about the first of July?' he said. 'That is all right.' And he put his hand on my shoulder, and he said, 'You are just as good as ever, Jimmie.' "

The witness swore that he believed Dr. Saunders, and relied upon the statement made to him, and went to Oelwein that night, where he met the superintendent the next day, and:

"I told him I was all right, and he said, 'Yes, I heard you were.' I told him Dr. Saunders said I was all right, and he said he heard I was. We went into the office and out to the yard office, and he figured out my time. He showed me what time I had lost, and wrote out a check for it, and I signed a receipt; and that was all there was

to it. We figured out what the understanding was, and the money we figured it out by the hours."

In signing the receipt, he relied upon what Dr. Saunders told him, and had no other knowledge of his physical condition. Later, he explained that, when he told the superintendent that Dr. Saunders said he was all right, the superintendent replied:

"Well, I have gotten a report from Dr. Saunders, too, and he said you was all right, and you can—we will settle up now, and you can go to work."

He was receiving 37 cents an hour, and the amount was arrived at by computing at that rate. He undertook to work, but was compelled to quit on account of his injury,—having started again to spit blood, and passing blood through the bowels, and continued in that condition up to the time of the trial. The testimony of the plaintiff's wife corroborated his account of the interview with Dr. Saunders.

From this evidence, the jury might well have found that both plaintiff and the defendant, acting through its superintendent, based their settlement on the statement by Dr. Saunders, that plaintiff was all right "to go to work, now," and that he was "all healed up," and that he was "just as good as ever." Had this been merely an opinion or prophecy as to what might happen in the future, or as to the future results of an injury, and that foretold by way of opinion or prophecy did not happen or result, what was said could not be treated as in the nature of a mistake of fact. *Seymour v. Chicago & N. W. R. Co.*, 181 Iowa 218. A mistake of fact, to constitute the basis of rescission, must relate to some present or past event, and the vital question to be determined is whether what Dr. Saunders said were statements of fact, or merely matters of opinion. If these were statements of fact, it is not very important through

1. RELEASE: unintentional misstatement of present fact.

what process of reasoning or proof they were arrived at,—whether from observation or deductions based on expert or scientific knowledge. The doctor, basing his conclusion on the patient's apparent condition and the history of his ailment, pronounced him then in a condition to go to work, "all healed up," "as good as ever." These statements related to the present, and described his condition in apt language as it then was; and we entertain no doubt in saying that they were statements of facts, and so intended.

In *Haigh v. White Way Laundry Co.*, 164 Iowa 143, a statement by the defendant's agent that the tendons of plaintiff's hand were injured, and that her injuries were trifling, was held to be merely a statement of fact.

In *Huston & T. C. R. Co. v. Brown*, (Tex.) 69 S. W. 651, a release was obtained, based upon representations made by a physician representing the railway company, that the "bones of his arm had knitted and united together, and that the arm was well;" and the court held that these were statements of fact. In response to the contention that they were mere expressions of opinion, the court said:

"The effect of his statement was that the appellee was a sound man, and that the bones of his arms had knitted together, and that it would be all right. It is true that this statement may have been predicated upon his opinion as a medical expert; but the opinion is based upon the facts of which he possessed knowledge. The fact that the statement made by Stewart was not intentionally false does not affect the right of the appellee to have the release set aside, if he was misled by the statement, and executed the release believing the statement was true. In such a case, innocent misrepresentation may as well be the basis of relief as where such statements are intentionally false."

In *Great Northern R. Co. v. Fowler*, 69 C. C. A. 106, the company's surgeon made an examination of the complainant, and found that his injuries consisted of a wound

of the scalp, a contusion of the shoulder, and nothing else, and expressed the opinion that he would be ready to go to work in a couple of weeks. In reliance, settlement was made; but the release was rescinded, owing to mutual mistake, upon a showing that his skull was then fractured, necessitating the removal of a part of his skull, which was pressing on the brain.

See, also, *Lumley v. Wabash R. Co.*, 22 C. C. A. 60; *Nelson v. Chicago & N. W. R. Co.*, 111 Minn. 193 (20 Am. & Eng. Ann. Cas. 748).

In *Tatman v. Philadelphia, B. & W. R. Co.*, 10 Del. Ch. 105 (85 Atl. 716), the test is said to be:

"Is the evidence in this case clear and convincing that the complainant was induced to compromise her claim and to execute her release by a mistake of past or present fact material to her contract?"

The distinction between a mistake in opinion or prophecy as to the future and one of past or present fact is pointed by Judge Sanborn in *Chicago & N. W. R. Co. v. Wilcox*, 54 C. C. A. 147, in saying:

"* * * It is not every mistake that will lay the foundation for the rescission of an agreement. That foundation can be laid only by a mistake of a past or present fact material to the agreement. Such an effect cannot be produced by a mistake in prophecy or in opinion, or by a mistake in belief, relative to an uncertain future event. A mistake as to the future unknowable effect of existing facts, a mistake as to the future uncertain duration of a known condition, or a mistake as to the future effect of a personal injury, cannot have this effect, because these future happenings are not facts, and, in the nature of things, are not capable of exact knowledge; and everyone who contracts in reliance upon opinions or beliefs concerning them knows that these opinions and beliefs are conjectural, and makes his agreement in view of the well-known fact that they may

turn out to be mistaken, and assumes the chances that they
will do so."

All that was said by the physician related to the pres-
ent condition of plaintiff,—to him as he then was,—regard-
less of the future; and we are of opinion that his statements
were of matter of fact, made as such by him,
2. RELEASE: re- knowing that they would be considered as
lease at law.
such in negotiating a settlement between
the parties; and that, in making settlement, both parties
relied thereon, as indicating permanent restoration to the
condition of health previous to the injury.

II.   The issue as to whether the release was the result
of mutual mistake, was triable at law. *Reddington v. Blue,*
168 Iowa 34; *Seymour v. Chicago & N. W. R. Co.,* supra.

III.   The consideration paid for the release was $450,
and this was not returned to the defendant or tendered to
it, prior to the commencement of the suit or at any other
time.   Ordinarily, as a condition precedent
3. RELEASE: re- to rescission, an offer to return the consider-
turn of con-
sideration.   ation received is essential to the mainte-
nance of the action. *See v. Carbon Block Coal Co.,* 159 Iowa
413.   But where the amount paid was for some specified
injury, or for loss of time or the like, and it is sought in the
action to recover for some additional injury not contem-
plated in the contract of release, or for damages consequent
on injuries necessarily excluded in computing the consid-
eration paid for the release, as where such payment was
for loss of time only, or specific items other than injuries
on which the action is based, then and in any such event,
tender of return of the consideration is not essential to the
maintenance of the action.   This is for the reason that, as
to the amount paid, there has been no mistake of fact, and
the releasee has the benefit of what he has paid for, and the
releasor may not recover therefor again.

The vice is in the release, in that the parties, through

or by the mistake of fact, have been misled in recovering, by the terms of the release, damages consequent on injuries not taken into account in making the adjustment, and such damages alone may be recovered, in the absence of a return of the sum received by the releasee. This appears from *Reddington v. Blue*, 168 Iowa 34; *Meyer v. Haas*, 126 Cal. 560 (58 Pac. 1042) ; *Lumley v. Wabash R. Co.*, 22 C. C. A. 60; *Bliss v. New York Cent. & H. R. R. Co.*, 160 Mass. 447; *Wabash W. R. Co. v. Brow*, 13 C. C. A. 222.

The plaintiff testified that, on June 16, 1915, the day the release was executed, he told the superintendent of the company that he was all right, and Dr. Saunders had so stated to him; and that the superintendent responded that the doctor had so reported to him; and that they then "went into the superintendent's office and out to the yard office, and he figured out my time. He showed me what time I had lost, and wrote out a check for it, and I signed a receipt; and that was all there was to it. We figured it out by the hours  *  *  *  I was getting 37 cents per hour, and the amount was arrived at by figuring it at 37 cents an hour." He was to resume work July 1st, following, but was not allowed to do so. This was all the evidence bearing on the issue as to what the $450 for which the release receipted was paid, and the fair inference to be drawn therefrom was that the payment was for loss of time. This being so, there was no occasion for tendering the return of the same, as a condition precedent to the maintenance of the action for personal injuries suffered by complainant. Though the re-lease is general, covering injuries of every kind and nature, and extending until doomsday, inquiry concerning the nature of the consideration and for what computed was per-missible, and, as we think, was not precluded by the terms of the release, based as it was on a mutual mistake. Hav-ing reached the conclusion that on this ground it might be rescinded, the investigation related solely to what must

be done to accomplish this, and therefore it was pertinent to the issue to ascertain precisely how and for what the consideration was measured. Such was our conclusion in *Reddington v. Blue,* supra, and we are content therewith, though decision may be found to the contrary.

IV. The reply was in two counts, one pleading that the release was procured by fraud, and the other that it was based on mutual mistake; and appellee contends that, for this reason, neither may be proven. A

**4. APPEAL AND ERROR: belated objection to pleading.** sufficient response is that the reply was in no manner assailed, and all exacted was that the evidence be sufficient to carry either issue to the jury. Nothing appears to the contrary in *Seymour v. Chicago & N. W. R. Co.,* supra. In that case, no failure to attack pleading is passed upon. Whatever it decides on the consequences of pleading both fraud and mutual mistake, it does not hold that such inconsistency may be urged on appeal for the first time.

We conclude that the court erred in withdrawing the issues from the jury. It must not be inferred from what we have said that we question the sufficiency of the evidence to carry the issue of fraud to the jury. Dr.

**5. RELEASE: fraud: jury question.** Saunders was the company's surgeon, and examined complainant as such. He made the statements with knowledge that what he said would be made the basis of the settlement about to be made. The complainant relied thereon in executing the release, and was deceived into signing the same when he would not otherwise have done so. His statements were untrue, and, under the rule laid down in *Haigh v. White Way Laundry Co.,* supra, it would seem that the evidence was sufficient to carry the issue of fraud to the jury. See, also, decisions to the same effect collected in a note to that case as reported in 50 L. R. A. (N. S.) 1091. See, also, *Davis v. Central Land Co.,* 162 Iowa 269; *Oestreich v. Chicago, St. P.,*

*M. & O. R. Co.*, (Minn.) 167 N. W. 1032. There was no motion to require plaintiff to elect on which of the issues he would stand, that of mutual mistake or fraud; and therefore, as the evidence sustaining either was sufficient to carry it to the jury, there was error in directing the return of a verdict for defendant.—*Reversed.*

EVANS, GAYNOR, PRESTON, and STEVENS, JJ., concur.