MISSOURI PACIFIC RAILROAD COMPANY *v.* TREECE.

4-3115

Opinion delivered October 30, 1933.

70

*Thos. B. Pryor* and *W. L. Curtis,* for appellant.
*Partain & Agee,* for appellee.

KIRBY, J., (after stating the facts). It is contended for reversal that the testimony was not sufficient to support the verdict, and that the court erred in not sustaining appellant's demurrer to the evidence at the time the appellee rested his case.

The complaint alleged, and it was conceded, that appellee at the time of his injury was working upon one of appellant's bridges upon which was laid its railroad track used in interstate commerce, and that the case falls within the provisions of the Federal Employer's Liability Act.

Appellee was working with an extra gang on one of appellant's bridges near Genneseo, Kansas, and had been engaged in flagging trains during the morning. He was called in by his foreman and given a ratchet wrench and directed to set the screws in the guard rail on the bridge. He called the foreman's attention at the time to the apparent defective condition of the wrench handed him, it being dented as though mashed and very rusty near the ratchet. The foreman told him that he had ordered some new wrenches, that they would arrive soon, and to go ahead with the work with the wrench furnished, assuring him that it could safely be done. He proceeded to the work with the wrench supplied and within 20 or 30 minutes the mechanism of the wrench inside the ratchet slipped, releasing its hold on the screw and causing him to lose his balance and fall from the platform to the ground, 18 or 20 feet below. Both bones in the left ankle were broken, the bones coming through the flesh, and his foot at the heel was turned around at least 3 inches.

The court did not err in refusing to instruct the jury that appellee was barred from recovery for his injury because of assumption of risk, that being a question properly submitted to the jury under the circumstances. Appellee complained to his foreman about the apparent de-

fective condition of the ratchet wrench furnished him, and was told that it could be safely used and to go ahead and use it until it could be replaced with one of the new wrenches ordered and agreed to be supplied shortly, and, such being the case, it was properly a question for the jury. The rule of assumption of risk in using defective appliances applies only where the appliance is used without objection. *Erie R. Co.* v. *Steel*, 286 U. S. 546, 52 S. Ct. 395; *Ry. Co.* v. *Vizvari*, 210 Fed. 118, L. R. A. 1915 C, 9; *Lehigh Valley R. Co.* v. *Skoczyla*, 278 Fed. 378; *Id.* 258 U. S. 631, 42 Sup. Ct. 463.

The chief contention for reversal urgently insisted upon is to the effect that, before bringing the suit, appellee had made a settlement with the railroad company and released it from all further liability, and that it was entitled to a directed verdict on that account. It is true appellee did sign a release and did agree to accept the sum of $900 in settlement of his claim and cashed the draft therefor, but the jury found from the testimony that this was done upon the positive assurance of the physicians of the railroad company and its general claim agent, that he would be completely recovered from his injuries within 8 or 9 months—be as well as he ever was, and could go back to work.

The release was executed upon these representations, and, at the expiration of the 8 or 9 months, his condition as shown by the proof had improved but little. He was injured on May 7, 1931, was given treatment by physicians of the railroad company, confined in the Missouri Pacific Hospital at St. Louis, and the purported settlement was made on November 16, 1931, after he had been called to St. Louis by the appellant. He saw the claim agent after he had been examined by Dr. Stewart at the hospital the last time and made a settlement with him that day and was paid the money immediately. Before the settlement was made, Dr. Stewart, who had attended him during his stay at the hospital, made the following statement, according to appellee:

"Q. Did Dr. Stewart make any statement to you about your leg? A. Yes, sir, he said: 'Your leg is getting along all right.' He said: 'In eight or nine months your

leg will be as good as it ever was, and you can go back to work on the job just as well as you ever could.' That is what he told me.''

After appellee talked with the doctor, the claim agent called the doctor on the 'phone about it and he reported to appellee as follows:

''Q. When you talked with Mr. Bailey, did he talk with Dr. Stewart? A. Yes, sir. When I got there he called Dr. Stewart, and he said the doctor said I would be all right in 8 or 9 months and be able to go back to work in that time, and my leg would be as good as it ever was.''

Appellee knew he had a bad leg when the release was signed, but ''I thought the doctor knew what he was talking about when he said it would be all right. * * * I was depending on what the doctor told me.''

Witness had not recovered at the time of the trial, and still appeared to be permanently injured. He testified about the pain and suffering endured; said his ankle was still stiff, his foot hurts, his leg swells, bleeds and still pains him, and that he wears a bandage on it all the time. The doctors testified that he was not getting well, and it depended on what was done with him whether he would get well, and one doctor recommended another operation and said that he might anticipate the loss of a portion of the leg; that he could not do heavy work; that the condition of his leg at the time of the trial was painful and would continue so so long as it was allowed to remain in its present condition.

Dr. Stewart denied that he told appellee what he testified the doctor had said about the condition of his leg, and also that he had told the claim agent what he was reported to have said to him over the 'phone. Stewart also said he did not know how soon appellee would be well, or at the time he was reported to have made the statement about the condition of the leg, that ''he would ever be able to return to work.''

The testimony discloses that, if the statements made by the doctor and the claim agent were their honest opinions about the condition with which they were dealing in making the release, then said release was secured under a mutual mistake of fact; and, if such opinions were not

honestly entertained, then the release was procured through fraudulent representations of the physician and claim agent, and in either event its effect could be avoided by the appellee. *Steel* v. *Erie R. Co.*, 54 Fed. (2d) 690; *Id.* 285 U. S. 546, 52 S. Ct. 395; *Lion Oil Ref. Co.* v. *Albritton*, 21 Fed. (2d) 280; *Great Northern Ry.* v. *Fowler*, 136 Fed. 118; *Id.* 197 U. S. 624, 25 S. Ct. 800; *Keich Mfg. Co.* v. *James*, 164 Ark. 137, 261 S. W. 24; *Phoenix Utility Co.* v. *Smith*, 185 Ark. 587, 48 S. W. (2d) 238.

This was not a case to cancel and set aside a release as fraudulently obtained by mutual mistake, as was that of *Chicago & N. W. Ry. Co.* v. *Wilcox*, 116 Fed. 913, relied upon by appellant, and the rule of evidence for the determination of issues is not the same. Our rule in equity cases where fraud or mistake is pleaded and affirmative relief sought is the same as announced in the case above. In *K. C. S. Ry. Co.* v. *Sanford*, 182 Ark. 484, 31 S. W. (2d) 963, it was said, after approving the rule in the Wilcox case: "But the instant case is a suit at law and the allegation of fraud or mistake is defensive only, no cancellation of the written instrument being asked, but its consequence merely sought to be avoided."

Little contention is made that the verdict is excessive, and under the circumstances of the case and the nature of the extended injury it does not appear to us to be so.

Several of the instructions given for appellee are objected to, but there were nine instructions declaring the law given on the part of appellee, none of which are set out in the abstract, and the presumptions are all in favor of such instructions declaring the law correctly, and the contention as to error in giving the instructions complained of will be overruled on that account.

Upon the whole case we do not find any substantial error in the record, and the judgment must be affirmed. It is so ordered.